By the Court—Woodruff, J.
So far as the questions involved in this case were considered in Holbrook v. Basset et al., now decided, the opinion of the Court in that case may be taken as our opinion in this. We there hold that the agreement, in pursuance of which the plaintiffs received a transfer of the note in question, is not void as a violation of the statute forbidding a transfer of effects for the use or benefit of a moneyed corporation, unless it be made to the corporation directly and by name; that the due transfer of collateral securities, valid in the hands of the Company, made to the plaintiffs in performance of that agreement, was good, and entitled the plaintiffs to collect the same; that a transfer of collateral security, made in good faith to secure a present loan to such a corporation, to be used, and in fact used, in due course of business, is not a transfer with intent to give a preference within the act (§ 9) forbidding transfers when insolvent with intent to give a preference to one creditor over another; that such transfer in the present case was not void for want of power in the Atlas Insurance Company to borrow the notes to secure the payment of which the transfer was made; and that the transfer was not void on the ground that it was not sufficiently authorized by the Board of Directors.
Other considerations, which were not suggested by the facts in the former case, are urged in this. In the present action, as in that, the note in suit was a valid, binding note, in the hands of the Atlas Insurance Company, subject only to the question whether any greater sum than the amount of the premiums for risks indorsed on the defendant’s open policy could be collected by the Company thereon. In this case, moreover, I think it must be conceded that the plaintiffs took no better title than the Company *187 itself had, as they were themselves officers or trustees of the Company, and must be deemed to have had knowledge of the title of the Company to the note.
1. It is suggested that, as the agreement in pursuance of which the transfer was made gave the plaintiffs authority to sell the collateral securities, or any part thereof, at public or private sale, the plaintiffs had no authority to use them in any other manner, or attempt, by any other mode, to make them available for the purpose for which they were transferred, and that, therefore, they have no power to sue for and collect them; that the agreement Raving pointed out a mode in which those collateral securities may be appropriated so as to indemnify those who were secured thereby, there is, by construction, an implied exclusion of any other power or control over those securities.
We think this is doing violence to the evident intent and meaning of the agreement. The liability of the parties was to be fully secured by collateral securities placed in the hands of the plaintiffs. The deposit of promissory notes for such a purpose in its nature imports authority to receive payment thereof, if payment be offered, and to collect them if not voluntarily paid. Such authority and power is incident to the very nature of the transaction or implied in it. A power to sell such securities, however, is not implied "in any such deposit: on the contrary, that no such power exists is settled. (Brown v. Ward, 3 Duer, 660; Wheeler v. Newbould, 5 id., 29, affirmed, 16 N. Y. R., 392.) Hence, for the more effectual and easy indemnity of the parties, an express power to sell was inserted in the agreement under consideration, not for the purpose of restricting or curtailing the authority of the plaintiffs, but of enlarging it—not for the purpose of making the hypothecation less advantageous, but of making it more effectual.
2. It is urged here that the indorsement upon the note in suit was such that it does not entitle the plaintiffs to sue; that they have acquired no title to the note by such an indorsement; that an order by the Atlas Insurance Company on the maker to pay to................... for account of the Atlas Insurance Company, does not divest their title. It is quite clear, we think, that, before the adoption of our Code of Procedure, no such objection to a plaintiff’s right to sue would have been seriously *188 suggested. The holder is at liberty to insert his own name in the blank, and the legal title is thereby vested in him. Before the Code, any mere holder, if the form of indorsements on the note was such as to enable him to assert a legal title, could maintain an action on a negotiable note, and, notwithstanding he held it for collection merely for the account of another party who was the real owner, it was enough that the plaintiff showed a legal title. Mere possession, with the owner’s consent to the collection, was often sufficient to enable him to maintain the action in his own name. What, then, is the substance of the present objection? The Code requires that every action be prosecuted in the, name of the real party in interest, except that trustees of an express trust are still authorized to sue in their own names. The real nature and character of the transfer is to be gathered from the agreement in pursuance of which it was made; and that declares that the transfer is to the plaintiffs as trustees, to secure the payment of the notes lent by the various parties thereto. If, therefore, there had been no indorsement whatever upon the defendant’s note, and it had been merely delivered to the plaintiffs in performance of that agreement, they would have acquired an equitable title to the note, and would, in equity, have been entitled to hold and to collect it for the purposes for which it was placed in their hands. The special indorsement put upon the note does not impair that title. It is an express order on the defendant to pay the plaintiffs the amount. Its further statement, that such payment is to be for account of the Atlas Insurance Company, is to be construed with reference to the purpose for which it was transferred to the plaintiffs, and in subordination to the agreement for such transfer already considered; and, in the light of the transaction between the Company and the parties to that agreement, the meaning of the indorsement is entirely consistent with the clear right of the plaintiffs, both as against the Company and the defendant, to have the note paid to them as ordered. Sundry parties had lent their notes to the Company under an agreement that they should be folly secured. The Company had agreed to pay those notes, and agreed to deposit, and did deposit, with the plaintiffs, the note in question, and others, to secure their performance of the agreement. Now, if the Company did not otherwise pay those borrowed notes, the *189 collection of the note in suit, and its application to such payment by the plaintiffs, would be in exact conformity with the rights of the parties under the agreement; and yet, the payment of the note in suit to the plaintiffs would be, in a just sense, a payment to them for account of the Company, because the proceeds were to be immediately applied to discharge an express obligation of the Company. The payment, therefore, by the defendant was to be (whether so in terms expressed in the indorsement or not) a payment for account of the Company; but the Trustees were to make the collection as a security to those who had lent their notes, to the end that the proceeds, though applied for account of the Company, should be applied in a particular manner agreed upon, which should operate to relieve them of liability upon the lent notes.
In short, the indorsement expressed no more than may truthfully be expressed whenever the payee of a note indorses it as a security for the payment of his own debt to another person. He appoints the payment to such other person, but for his own account, because it is both the right and duty of the indorsee to apply the proceeds directly and immediately to the discharge of his indebtedness. So a lien may be created upon promissory notes and bills of exchange deposited for collection, in such manner that although every note or bill may be made payable and may be paid “for account of” the depositor, still that lien may entitle the Bank to require the payment, and make the application of the moneys received for account of the depositor, so as to discharge the lien. The plaintiffs were created Trustees for the very purpose of carrying into effect the arrangement which could not otherwise be conveniently managed, by reason of the number of parties interested.
We are clear not only that the form of indorsement presents no obstacle to the recovery herein, but that it is not inapt to express the relation of the parties to the subject, in entire consistency with the trust vested in the plaintiffs, to be executed for the benefit of all the parties.
3. It is claimed that the whole consideration of the note was not earned, and therefore the note was without consideration. The jury found specially that the note was given as and for the premium upon an open policy of insurance. This, then, is con *190 sideration enough to sustain the note., So long as the Company was able and willing to insure according to the terms of the policy, the defendant could not demand a return of his note without making a surrender of his policy. But, conceding that the plaintiffs are in no better position than the Company itself were in this respect, and also that the maker of a noté for the premium, upon an open policy, may lawfully refuse to pay such proportion thereof as by the indorsements on his policy appears not to have been used, (Elwell v. Crocker, 4 Bosw., 22,) still, in this case, the defendant fails to show that he is not liable for" the full amount. So far as risks have been actually assumed, and indorsed upon his policy, the defendant is liable, and would be liable if the Company were^plaintiff. The jury find that the amount of $118.80 is due fór risks indorsed and premiums earned, and that a further insurance is indorsed, which was made in all respects binding, at the rate of three and a half per cent upon a shipment, the amount of which he agreed to report to the Company.
Neither by report to the Company, nor by any proof on the trial, did he show that the premiums upon that risk did not more than equal the residue of the note, and we are clearly of opinion that the plaintiffs, under those circumstances, have-a right to rely on the note itself as due in full. If the plaintiffs have not a right to collect the note, whether the consideration has been earned or not, (vide, Central Bank of Brooklyn v. Lang, 1 Bosw., 202,) we are clear that they showed enough, by producing the note, to put the defendant to show that it was without consideration, or to what extent the consideration was deficient, and that he not only failed to do this, but the proof warranted the presumption that the full amount was earned.
4. It only remains to notice the exceptions to the rejection of testimony. As to the inquiry whether anything was due from the Atlas Insurance Company to the defendant, at the time of the trial, for losses, it is obvious that no answer to that question conld affect the right to recover. If a set-off could be permitted, it must have been set up in the pleadings. No such claim is made in the answer. Besides, the note in suit was transferred to secure parties actually advancing their notes upon the faith and credit of that transfer. No set-off arising after that transfer could affect them or the right of the plaintiffs to collect - the full *191 amount of the note. It is not by this disposition of the exception intended to admit by implication that any set-off could have been allowed to the defendant, if pleaded, whensoever it accrued to him, the plaintiffs having received the note before its maturity, and to secure the parties who, at the time, advanced their notes, as already stated.
The other exception arises on the exclusion of evidence designed to show that the Company was insolvent when the agreement was made, in pursuance of which" the note was transferred to the plaintiffs. Such proof would not invalidate the transfer. No statute and no rule of law forbids a moneyed cor- ■ poration to transfer a note merely because it is insolvent. If we understand the claim of the defendant’s counsel, he does not insist that mere insolvency makes such a transfer invalid. The only provision which can be supposed to be material to the question, is the one already noticed as section 8 of the statute, forbidding a transfer with intent to give a preference to one creditor over another. Here the transfer was not for the purpose of giving any preference to anybody; it was to secure the repayment of a then present loan. The money was thereby raised and received by the Company. Such a transfer could not operate as a preference. The Company borrowed the money and secured its repayment, and that is all.
If it were material to inquire what use the Company made of the money so obtained, the proof is unqualified and uncontradicted that “ it was used by the Company in its general business, the payment of losses and expenses.” So that if it had been shown that in truth the Company was at that date insolvent, it could in no wise affect the validity of the transfer. So far from any preference being gained by the transfer of the notes under the agreement, the parties lending their notes thereby assumed a hazard of loss in the very transaction itself, without the chance of gain. It seems to us that discussion cannot make it more plain that such a transfer was not, and could not be, from its very nature, a transfer with intent to give a preference to one creditor over another. Until after the transfer, the parties were not creditors.
Had there been any claim that the money was raised and applied in order to pay favored creditors, and that the whole *192 arrangement to raise money was entered into with that view, there might be some plausible foundation for insisting that it might be shown that the plaintiffs were parties to the scheme, and so the whole transfer was invalidated; but no such claim was made; no such purpose or design appeared at the trial, and if the state of the pleadings would admit of such proof, none such was proposed or offered.
The plaintiffs should have judgment upon the verdict for the amount of the note and interest.
Judgment for the plaintiff accordingly.