## CONSIDERANT *v.* BRISBANE.

The agent of a foreign corporation may maintain an action in his own name upon a subscription note, payable to the plaintiff, "as executive agent of the company," for stock of the corporation to be issued to the signer. The contract is to be deemed made with the agent, and he the trustee of an express trust, within § 113 of the Code, though he is mentioned in respect to his representative character, and not as promisee individually; and nothing appears to show that he has any interest apart from his principal, or that there was any motive for interposing him as the formal contracting party between the promisor and the party equitably entitled to the benefit of his contract.

APPEAL from the judgment of the Superior Court of New York city, sustaining a demurrer to a complaint, which alleged, in substance, that the European and American Colonization Society in Texas was a corporation duly created by and existing under the laws of Belgium, in Europe, of which said corporation the business name was Bureau, Guillon, Godin & Co.; that the defendant, on or about the 1st March, 1855, at the city of New York, applied to the plaintiff (acting as the executive agent, and, as such agent, authorized to receive subscriptions to the stock of the said company), and authorized the said plaintiff to subscribe the name of the said defendant in the books of the said company, as an original subscriber for the stock of said company, known as premium stock, to the amount of $10,000, which the plaintiff then and there undertook and faithfully promised to do; that the said defendant then and there made and executed, in writing, two subscription notes, or contracts, for the payment, in the aggregate sum of $10,000, for the shares so taken by the said defendant in said company, and delivered them to the plaintiff, which said notes were in the words and figures following, to wit:

(1.)                    "*New York, March 1st,* 1855.
"$5,000.

"On the first day of July, 1856, I promise to pay V. Considerant, as executive agent of the company, Bureau, Guillon,

Godin & Co., the sum of five thousand dollars, for which I am to receive stock of said company, known as premium stock (*actions à prime*), to the amount of $5,000, value received.

" A. BRISBANE."

(2.)                              " *New York, March 1st,* 1855.
" $5,000.

" On the first day of September, 1856, I promise to pay to V. Considerant, as executive agent of the company, Bureau, Guillon, Godin & Co., the sum of $5,000, for which I am to receive stock of said company, known as premium stock (*actions à prime*), to the amount of $5,000.

" A. BRISBANE."

That said plaintiff, acting as such executive agent, and under and by virtue of the authority vested in him by said defendant as aforesaid, duly caused the name of the defendant to be entered on the books of the said company, at Brussels, in Belgium, for the amount of stock so subscribed for by him, and caused certificates, in the usual form issued by said company, to be issued in the name of said defendant; that the plaintiff has always been ready and willing to deliver to the defendant the certificates of said company of the shares, or interest, so subscribed for by the defendant as aforesaid, or intended so to be, and, on the maturity of each of said notes, caused the same to be tendered to the defendant, on the payment by the defendant of the sum agreed to be paid by him for the same, and said plaintiff is still ready and willing so to do; but the defendant has hitherto wholly neglected and refused to pay the sum so agreed to be paid by him as aforesaid, and still wholly neglects and refuses so to do, to the damage of the plaintiff of $10,000 and upwards: wherefore, the plaintiff demands judgment, &c.

The defendant demurred to the complaint, assigning as the ground therefor that it did not state facts sufficient to constitute a cause of action.

The Superior Court sustained the demurrer, on the ground that the action could not be maintained by the plaintiff; and

the plaintiff appealed to this court. The cause was submitted on printed arguments.

*Francis H. Dykers* and *John Slosson*, for the appellant.

*William B. Leeds*, for the respondent.

WRIGHT, J. It is conceded, as it must be, that the complaint states a cause of action in the corporation, for whom the plaintiff acted as executive agent, against the defendant. The defendant subscribed for $10,000 of the stock of the company, through its agent, and agreed and promised in writing to pay $5,000 of the sum on the 1st July, 1856, and the remaining $5,000 on the 1st September, 1856. The company, and not the plaintiff, was the party beneficially interested, and the duty, or obligation, to issue the stock (which was the sole consideration for the defendant's agreement and promise), rested upon, and could only be performed by, such company. Had the corporation, on the 1st of July, or the 1st September, refused to issue the stock, no action could have been maintained by anybody on the instruments executed on the 1st March, 1855, by the defendant, and set out in the complaint. On the other hand, the defendant's remedy would be against the corporation, and not against the person professedly acting as its agent. Thus the corporation had the exclusive beneficial interest in the subject of the defendant's promises. The plaintiff was not personally bound by the contract; and the corporation was bound, unless the contract was a *nudum pactum.* The averments of the complaint exclude any other construction than that the plaintiff acted in the transaction as the agent of the company; and if we look exclusively to the subscription notes, and interpret the defendant's promises from what appears on the face thereof, it is clear that the official character of the plaintiff was alone in the mind of the promisor and contemplated in the promise, and that such promises were not to him personally, but in his official or representative capacity.

The facts stated, therefore, in the complaint, showed the corporation and the defendant to be the parties in whom the

interest in the contract vested, and the plaintiff, who made the contract, having no beneficial interest in it, nor bound by it, nor furnishing any part of the consideration for it. The single question is, whether the plaintiff may maintain an action for the breach of it.

The Code provides, that "every action must be prosecuted in the name of the real party in interest," except that "an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted." (Code, §§ 111, 113.) And it is declared, that "a trustee of an express trust, within the meaning of the section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another. (§ 113.)

It is plain that the plaintiff is not the real party in interest; but the question remains, Is he "a trustee of an express trust," within the definition of that term in section 113 of the Code? Is he "a person with whom, or in whose name, a contract is made for the benefit of another?" As such, he would be authorized to sue on the subscription notes in his own name, notwithstanding the beneficial interest was in his principals.

The subscription notes, or contracts, purported on their face to be made with the plaintiff as executive agent of the foreign company, and the promise was to pay to him, as such agent, the sums of money named therein, for which the defendant was to receive the stock of the company. They were not contracts, therefore, directly with the principals, with a promise to pay the plaintiff for their benefit. On such a case, no action could be maintained by the promisee, though the promise might support an action by the company. They were, rather, express contracts to pay the plaintiff for the use of, and on a consideration moving from, the company. Before the Code, I think a contract of this character would have raised such a legal interest, by way of trust, as that an action might have been maintained by the plaintiff. In cases of written contracts, the right of action followed the legal title. This title was in the party entitled to the performance of the contract; and the party

*Considerant v. Brisbane.*

entitled in law was the one to whom, by its terms, it was to be performed, or his assignee, if assignable. Written express contracts, by or with agents contracting in their own names, with or without a description of agency, were not exceptions to the rule. Such a contract was with an agent, and in his name, when executed by or to him in his individual name, without expressing the agency, though the other party knew he was acting as agent in the transaction, and contracted with him in that capacity; and it was equally with him, and in his name, though he was described as agent on its face, when negotiated with him, and by its terms to be performed by or to him. The words expressive of the agency might, if necessary for the convenience of the remedy, be rejected as a mere description of the person. The payee of a note, although received by him as agent for another, might sue upon it in his own name. (*Buffum* v. *Chadwick*, 8 Mass., 103.) So, when a bill of exchange was indorsed to "S. S. F., cashier," he might maintain an action upon the bill in his own name, notwithstanding he might be obliged to account to the bank of which he was cashier. (*Fairfield* v. *Adams*, 16 Pick., 381.) In *Sargent* v. *Morris* (3 Barn. & Ald., 277), BAYLEY, J., stated the rule as follows: "If an agent acts for me and on my behalf, but in his own name, then, inasmuch as he is the person with whom the contract is made, it is no answer to an action in his name to say that he is merely an agent, unless you can also show that he is prohibited from carrying on that action by the person on whose behalf the contract was made." When there was an express promise in writing to an agent, the action might be in the name of the agent. To hold otherwise, as was said by BRONSON, J., would be to declare the contract nugatory, except where it was in the form of negotiable paper which could be transferred to the principal, so as to enable him to sue in his own name. (*Harp* v. *Osgood*, 2 Hill, 216.) In the present case, before the change of the rule, I cannot well perceive how the company, who had the exclusive beneficial interest, whilst the express promise was to pay the plaintiff, and who had, therefore, the legal interest by way of trust,

could have maintained an action at law in its own name to recover the money.  Undoubtedly, when a contract had been made directly with the principal, by a mere agent having no beneficial interest in it, such agent—the case of a factor being, to some extent, an exception—could not support an action thereon.  Where A, having a general power of attorney to collect debts, &c., in the name and for the use of B, delivered a contract to an attorney to collect, who gave him a receipt for it generally, as for collection, it was held that A could not maintain an action in his own name against the attorney for money collected by him on the contract so put into his hands. (*Gunn* v. *Cantine*, 10 John., 387.)  But, though the agent in that case had no beneficial interest in the contract, it was admitted that he might have sued in his own name if there had been an express promise to pay the money to him. (*Harp* v. *Osgood*, *supra*.)  Where the contract was express to pay A for the use of B, on consideration moving from B, it raised such a legal interest by way of trust as would maintain an action in A's name, though A may have acted as the agent of B, with or without disclosing his agency.  In such a case, to entitle the agent to sue in his own name, it was not necessary that the beneficial interest should be in him, or that the consideration should proceed from him.  Nor was it required that he should himself be personally liable on the contract, as a right to sue as trustee could exist without any pretence of a personal liability.

Prior to the Code, therefore, I am of the opinion that the plaintiff might have maintained an action on the express contracts set out in the complaint for the benefit of his principals, having a legal interest in them by way of trust.  The promise being to him in writing for the benefit of another, he would have been deemed the party "with whom, or in whose name," the contracts were made, and in whose name alone the promise could be enforced in a court of law.  The Code, however, abrogated the common law rule, that the right of action followed the legal title, and made the beneficial interest the sole test of the right.  In adopting the latter rule, it was easily

to be seen that there were a class of cases in which it would be extremely prejudicial to the remedy, as well as difficult of application, viz., the case of executors, persons authorized by statute to sue, and trustees of an express trust. To obviate this, it was specially provided that, in these cases, the executor, or statutory party, or trustee of an express trust, might sue without joining with him the person for whose benefit the action was prosecuted. (Code, § 113.) The term, "trustee of an express trust," had, however, acquired a technical and statutory meaning. Express trusts, at least up to the adoption of the Revised Statutes, were defined to be trusts created by the direct and positive acts of the parties by some writing, or deed, or will; and the Revised Statutes had abolished all express trusts, except as therein enumerated, which related to land. If the 113th section of the Code was to be confined and limited to those enumerated as express trusts, the practical inconvenience arising from making the beneficial interest the sole test of the right to sue, and which that section was intended to obviate, would continue to exist in a large class of formal and informal trusts. Accordingly, in 1851, the section was amended by adding the provision that "a trustee of an express trust, within the meaning of the section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another." It is to be observed that there is no attempt to define the meaning of the term "trustee of an express trust," in its general sense; but the statutory declaration is, that those words "shall be construed *to include* a person with whom, or in whose name, a *contract* is made for the benefit of another." ' The counsel for the respondent insists that the sole intention of the legislature, in amending the section, was to remove a doubt that had been expressed, whether a factor or other agent who had, at common law, a right of action on a contract made for the benefit of his principal (by reason of his legal interest in the contract), was, by the Code, deprived of that right. But no such limited intention can be inferred from the words of the statute. Indeed, it is only by a liberal construction of the section that the case of a contract by a

factor (an individual contract) can be brought within it at all. It is intended, manifestly, to embrace, not only formal trusts, declared by deed *inter partes*, but all cases in which a person, acting in behalf of a third party, enters into a written, express contract with another, either in his individual name, without description, or in his own name, expressly in trust·for, or on behalf of, or for the benefit of, another, by whatever form of expression such trust may be declared. It includes, not only a person with whom, but one in whose name, a contract is made for the benefit of another. The contracts set out in the complaint are within its terms. They are made in the name of the plaintiff, for the benefit of the Belgian corporation. The subscription notes are payable to the plaintiff by name, as "executive agent" of principals named, and are, therefore, contracts made with him for the benefit of another, and in a representative· capacity necessarily involving a trust. The court below assumed the ground that, where the promisee, though named in the contract, was mentioned only in respect of his official or representative character, and not as promisee individually, the promise would not be deemed made to him; and, hence, such a case would not be embraced within section 113. This cannot be the true construction of the statute. If the promise be to a person described as agent, and it appears upon the face of the writing, expressly or by implication, that it was made for the benefit of another, it is within the intention, and, I think, the terms, of the enactment. It could hardly have been the intention, as contended for by the counsel of the respondent, to include a contract which did not, on the face of it, in terms or by implication, declare or disclose a trust, in the category of "express trusts;" whilst one, expressing the trust on its face, was to be excluded. The obvious policy of the legislature was to reserve the right of action in all cases of express trusts, whether the instrument in terms declared the trust, or by necessary implication disclosed it. In this case, if the words, "as executive agent," are to be treated as a mere description of the person, then the promise was to the plaintiff individually; but if the plaintiff is to be considered

Considerant *v.* Brisbane.

as acting in a representative capacity, they are contracts made with him in that capacity for the benefit of another, and necessarily involving a trust. Indeed, the terms "executive agent" indicate an active trust. Had the subscription notes on their face been made payable to the plaintiff "in trust for the company," &c., no one would doubt of their falling within the statute. In legal effect, the contracts as much involve a trust as though the same was declared in words.

The court below reached the conclusion that, though the plaintiff's name was contained in the contract, it was accompanied by such a designation of the representative character in which he was named as promisee that the promise was, in judgment of law, made to the principal and not to himself; and that, in such cases, the contract could not be said to be made in his name. It is assumed that the written contract in this case was made, in legal effect, with the principals, by the plaintiff, acting as their mere naked agent, and, in a legal sense, cannot be said to be made with or in the name of the plaintiff. It would follow, from such an assumption, that, neither before nor since the Code, could the plaintiff sue thereon. This, however, is an incorrect view. Before the Code, I think, the remedy at law, upon an express contract of this character, must have been enforced in the name of the plaintiff; but that, if there was any doubt upon this subject, the plaintiff clearly falls within that description of person who, by the 113th section of the Code, shall be construed to be a "trustee of an express trust," and, as such, authorized to sue. Since the adoption of the general rule, that actions, either of a legal or equitable nature, must be prosecuted in the name of the real party in interest, the person for whose benefit the action was prosecuted might be joined with the trustee; but section 113 expressly authorizes suits to be maintained by the trustee alone.

Upon the whole, I am of the opinion that the action may be prosecuted in the name of the plaintiff, and that the demurrer cannot be sustained. The judgment of the Superior Court should be reversed, and that of the special term affirmed.

SELDEN, DAVIES, CLERKE, and WELLES, Js., concurred.

DENIO, J. (Dissenting.) If this action had been prosecuted under the rules as to parties which prevailed before the Code of Procedure was enacted, the question would have been, whether the contract was made with the plaintiff, as the promisee, or with the corporation mentioned in the complaint, by the plaintiff, as its agent. If the plaintiff was considered the contracting party, the action could be maintained in his name, though the corporation were the party beneficially interested; the rule, in actions *ex contractu*, being, that the suit must be in the name of the party in whom the legal interest is vested, though the equitable interest should be in another person. The Code, though adopting, as a general rule, the practice prevailing in courts of equity, by which the parties having the beneficial interest were required to be brought before the court, made an exception in favor of the trustees of express trusts, and in favor of parties with whom and in whose name contracts were made for the benefit of other persons. Such contractors, in order to include them within the words of the exception, were to be considered trustees of express trusts. The question to be determined is, therefore, precisely the same which would have arisen if there had been no Code, namely, whether, in point of law, this contract was made by the defendant with Mr. Considerant, the plaintiff, or with the corporation named Bureau, Guillon, Godin & Co.

In strictness of language, the promise is to the plaintiff. The defendant in terms promises to pay the money to him. But it is not a case in which the words which follow—" as executive agent of the company Bureau, Guillon, Godin & Co."— can be taken as a descriptive addition to his name; for they are clearly inserted for no such purpose, but to denote the character in which he is to receive the money. It is to be paid to him *as* agent for a principal who is named. There is nothing on the face of the instrument, or in the averments of the complaint, to show that the plaintiff has any pecuniary interest in the performance of the agreement, or that he was under a

mutual obligation to furnish the shares for which the sum promised was the price, or that any motive of interest or convenience existed for interposing a formal contracting party between the promisor and the party entitled to the thing promised. In such case my opinion is that the contract is generally deemed to be made with the person named as the real party in interest in the transaction.

The cases, in which a similar question has arisen, are numerous; but they are not quite in harmony with each other. In England, *Pigott* v. *Thompson* (3 Bos. & Pull., 147), is often referred to. Commissioners were authorized, by act of Parliament, to lease the right to certain tolls. They made a lease to the defendant, who agreed in writing to pay £140 per annum to the treasurer of the commissioners, at his house in Ely. It was held that this was equivalent to a promise to pay to such person as the commissioners should choose to make their treasurer for the time being, and that the legal interest in the contract was in them, and not in the treasurer. Consequently, the action, which was in the name of Pigott, who was the treasurer, was defeated. In *Gunn* v. *Cantine* (10 John., 387), the plaintiff brought the action upon the following agreement, signed by the defendant: "Received of Daniel Gunn an article of agreement between Barent Stryker and Alexander Boyd, dated, &c., assigned to Stephen Simmons, to collect the money therein contained." The action was brought by Gunn to recover a sum of money which the defendant had collected on the security mentioned. It was shown that the plaintiff was an agent of Simmons. It was held that the action could not be sustained; and *Pigott* v. *Thompson* was relied on as authority. The case is subject to the remark, that the promise to pay over the amount to the plaintiff was not express. In *Safford* v. *Stevens* (2 Wend., 158), the action was on a stipulation, which, after giving the title of a case in the Supreme Court, was in these words: "I hereby stipulate that I will pay to the attorney for the defendant the taxable costs in this suit now accrued." It was held that the agreement was not made with the attorney,

but with the defendant, for whom he acted. This case was in the Court of Errors, and the opinion was by Chancellor WAL-WORTH. *Buckbee* v. *Brown* (21 Wend., 110), was an action of debt, brought by a wharfinger to recover tolls which an act of the legislature had directed to be paid to the wharfinger, though the beneficial interest in them was in the proprietors of the pier. The case was held to be within the principle of *Pigott* v. *Thompson,* and the defendant prevailed. *Bayley* v. *The Onondaga Mutual Insurance Company* (6 Hill, 476), was brought on a bond given by one of the agents of the insurance company, with sureties, for the faithful performance of his duty as agent. The bond ran " *to the directors of,*" &c.—the title of the corporation, which was the plaintiff in the action. It was held that the plaintiff was entitled to recover. Chief Justice NEL-SON, who gave the opinion, seemed to put it, in the first place, upon the footing of a misnomer of the corporation in the bond, upon which it would stand well enough. But, then, he lays down this rule, which, if correct, is decisive of this case : " Where a contract purports on its face to have been made by or with an agent having no direct or beneficial interest in the transaction, the suit must be brought in the name of the principal, as the contract is, in legal effect, made with him." He cites, appro-vingly, the case of *Pigott* v. *Thompson,* and two cases decided in Massachusetts, to be immediately noticed. The first of these was *Gilmore* v. *Pope* (5 Mass., 491). It was an action brought on an instrument which, after reciting the formation of a turn-pike corporation, proceeded as follows : " We, the subscribers, in consideration, &c., hereby agree to take the number of shares set against our respective names severally, and to pay on demand to John Gilmore [the plaintiff], or order, all assess-ments that may, at any time, be made," &c. The defendant had subscribed the instrument for ten shares. It was held that the action could not be sustained in the name of Gilmore, the plaintiff, who was an agent to procure subscriptions, but should have been brought in the name of the corporation. Chief Justice PARSONS, by whom the opinion was written,

put the decision mainly on the ground that, considered as an agreement to pay the plaintiff, it was a *nudum pactum*. *The Taunton and South Boston Turnpike Company* v. *Whiting* (10 Mass., 327), the other case referred to by Chief Justice NELSON, was brought on a subscription similar to the one in the last case, payable to the same John Gilmore, and the action was in the name of the corporation, which had accepted and recognized the instrument and had issued stock to the defendant. The judgment was in favor of the plaintiff. If these cases stood alone, the question would appear to be pretty well settled in favor of the defendant by judicial authority; but there are several cases of a contrary tendency. (*Anderson* v. *Martindale*, 1 East., 497; *Harp* v. *Osgood*, 2 Hill, 216; *Davis* v. *Garr*, 2 Seld., 124; *Fisher* v. *Ellis*, 3 Pick., 322; *Fairfield* v. *Adams*, 16 id., 381; *Buffum* v. *Chadwick*, 8 Mass., 103.) But, in *The Commercial Bank* v. *French* (21 Pick., 486), which was on a note by which the defendant promised to pay the cashier of the plaintiff's bank a certain sum, it was held that the action was well brought in the name of the corporation. It was admitted that the Massachusetts cases on this point clashed; but it was suggested that they might be reconciled by holding that the promise was legally made to the agent, where his name as well as situation was mentioned. This distinction, it is apparent from the cases, would not reconcile those in this State with those which have been cited from the Massachusetts court. The question is discussed, and some additional cases commented on, in Story's Treatise on Agency, section 395 and the notes. Without undertaking to lay down a principle which will determine all cases of this kind, I think it may safely be stated, that where it appears that the duty which the instrument acknowledges is due to a corporation whose agent or officer is by the contract appointed to receive the thing promised, and nothing appears to show that he has any interest apart from his principal, or that there was any motive for interposing the agent as a contracting party between the promisors and the party equitably entitled, it ought to be held that the promise

was made to the latter. That rule, applied to this case, would lead to the affirmance of the judgment appealed from.

COMSTOCK, Ch. J., and BACON, J., concurred in this opinion.

Judgment at general term reversed, and that at special term affirmed.