The Atlas Mutual Insurance Company was authorized "to negotiate its promissory notes for the purpose of paying claims or otherwise, in the course of its business." (Laws of 1842, p. 263, § 12; Laws of 1843, p. 69, § 8.) It therefore had the right to transfer the defendant's note to the *Page 416 
plaintiffs, as collateral security for those loaned to it, and placed in the hands of the plaintiffs for its benefit.
The statements that the company deposited with, and transferred the defendant's note to, the plaintiffs as its trustees and the trustees of the sixteen persons and firms named, who had loaned it their notes, and that the defendant's said note was "duly indorsed in blank by said Insurance Company, by an officer thereof duly authorized," at or before the time of such deposit, are sufficient upon demurrer to show that the plaintiffs as trustees had title to such note, without reference to the allegation that they were, as such trustees, the lawful owners and holders thereof.
The objection that the allegations were too indefinite, could be taken only by motion. (Seeley v. Engell, 3 Kern., 542;People, ex rel. Crane, v. Ryder, 2 id., 433; Cheney v.Fisk, 22 How. Pr., 236; 15 N.Y., 425; 23 id., 491.)
The transfer of the note by the company to the plaintiffs as collateral security for the benefit of the sixteen persons and firms who had deposited theirs in the plaintiffs' hands for the benefit of the company, was not in violation of any statute or principle of the common law, and was as valid as if the transfer had been made directly to those persons and firms.
The allegations in the complaint, to which allusion has been made, justify the conclusion that the officers of the Insurance Company were authorized by a resolution or by-law of the board of trustees to borrow money or notes, and pledge the defendant's note and other collateral securities for the payment of the same.
The writing pursuant to which the transfer was made, constituted the plaintiffs trustees of an express trust, within the meaning of section 113 of the Code, as to the defendant's note, and they may maintain the action thereon in their own names without joining the sixteen persons and firms for whose benefit it is prosecuted, unless they are restricted by the writing to a sale of the note. (Considerant v. Brisbane, 22 N.Y., 389.)
There can be no doubt that the plaintiffs could have received the money due upon the note; and there would *Page 417 
have been no ground for questioning their right to enforce payment of it by suit, if the words in the writing, authorizing the plaintiffs to sell it had been left out. It is evident that those words were inserted, not with the view of restricting or curtailing the authority of the plaintiffs in respect to the notes and other collateral securities placed in their hands, but for the purpose of enlarging it so they would have the right to sell the note and other collaterals pledged to them as security without notice to the company, and to enable them to raise money without delay, by a sale of the same, in case of a necessity for such a course. For without those words in the writing the plaintiffs would not have possessed authority to sell the note or any of the collateral securities in their hands, until they had given personal notice to the company to redeem the same. (Wheeler v. Newbould, 16 N.Y., 392.) It is, therefore, clear that the authority given to the plaintiffs to sell the note did not take away their right to collect it. A similar conclusion was arrived at by the Superior Court of the city of New York, when this writing was before that court in Nelson v. Wellington (5 Bosw., 178).
These conclusions show that the demurrer to the complaint was not well taken, and that the judgment of the general term of the Supreme Court should be reversed, and the order of the special term affirmed, with costs.
All the judges concurring,
Judgment reversed, and judgment at special term affirmed. *Page 418