Uickman, J.
Independent of the power of sale vested in James "W. Sibley, by the instrument of writing dated April 2, 1883, he would not have been authorized to sell at public or private sale the note and mortgage of twenty-five thousand dollars, which Truman B. Handy had pledged as collateral security for the payment of his note of fifteen thousand dollars. There is a distinction between a pledge of ordinary chattels, and a pledge of commercial paper. A pledge of the latter as. collateral security for the payment of a debt, does not, in the absence of a special power for that purpose, authorize the pledgee to sell the securities so pledged, upon default of payment, either at public or private sale. He is bound to hold and collect the same as they become due, and apply the net proceeds to the payment of the debt so secured. The reason assigned for this exception to the general rule in relation to the sale of property pledged is, that such securities, not being* usually marketable at their fair value, would generally be sold at a sacrifice, and injustice would thus be done the debtor; and it cannot be presumed it was the intention of the parties thus, to deal with the securities. Wheeler v. Newbould, 16 N. Y. 392; Fletcher v. Dickinson, 7 Allen 23; Nelson v. Wellington, 5 Bosw. 178; Brown v. Ward, 3 Duer. (N. Y.) 660; Morris Canal & Banking Co. v. Lewis, 12 N. J. Eq. 323; Joliet Iron & Steel Co. v. Scioto Fire Brick Co., 82 Ill. 548; Zimpleman v. Veeder, 98 Ill. 613. Ordinarily, where there is a deposit of *16 personal property as security, there is an implied power of sale upon default, upon giving reasonable notice to the debtor to redeem. But the pledgee of negotiable paper, who desires a more summary and speedy means of obtaining money from his security, than by collecting the same when it falls due, or by a bill in chancery and a judicial sale under a regular decree of fore■closure, will obtain a special power of sale from the pledgor. In enforcing his rights, however, by a salé of the pledge, he will be held to the strictest good faith in the execution of the power for the protection of the rights of the pledgor, and will be charged with a trust for the benefit of the debtor, and the benefit of those to whom the debtor may have assigned his interest.
It seems to be beyond controversy, that the note for $25,000, secured by mortgage, and given by the children of Truman B. Handy to their father, was good for that amount, although purchased by Sibley at the sale for $15,000 only — that being the amount of the note for which the note of $25,000 had been pledged as collateral security. Upon foreclosure of the mortgage, and sale of the premises, it appears that a sum would be realized more than sufficient to pay the note of $25,000 — sufficient to pay the principal and interest of the note of $15,000, and leave a surplus. The question arises, whether Sibley, because of his sale and purchase of the pledge, shall be permitted to retain this surplus embraced within the note of $25,000 as his own property, or be held to account for it as trustee to Eugene F. Williams.
The mortgage note of $25,000 was executed to Truman B. Handy by his children, solely for his accommodation, to enable him to pledge the same as collateral, or, by discount to obtain money for his convenience, and for no other consideration. They executed the note and mortgage simply as surety for their father. They had no knowledge of the power of sale given by him to Sibley until long after the sale of the pledge; nor did they have any notice of the time or place of such sale, or learn of the sale until long after it was made. We do not think that under the circumstances, Sibley can subject their property to the payment of $25,000, when he loaned to their *17 father only $15,000; or that he cap retain the balance, $10,-000, without any consideration therefor. Handy deposited or pledged the note and mortgage as collateral security for the payment of $15,000, and no more. If, at the maturity and non-payment of his claim, Sibley, without resorting to a sale of the pledge, had sought to enforce payment by foreclosure of the mortgage, he would have been entitled out of the proceeds of the sale of the premises, only to the amount of his debt. He could not, by resorting to a sale of the pledge, enlarge his equities, or successfully invoke the aid of a court of equity, in an effort to exact from his debtor more than he owed him.
The principle is elementary, and as old as the Roman law, that if the creditor exercises his power of sale over the pledge, he must give the surplus, after paying himself, to the debtor. D. 13, 7,42; Hunter’s R. L. 439. And as between debtor and creditor, whatever may be the effect of a sale as to annulling all the debtor’s residuary interest in a pledge of ordinary chattels, when a question arises as to the rights of third parties, who are makers of accommodation paper pledged as collateral security, such parties should not be required to pay the credit-tor more than the amount of his debt. It has been decided by the supreme court of Massachusetts, in Fisher v. Fisher, 98 Mass. 303, that if a promissory note, which is without consideration as between the original parties thereto, is delivered without consideration to another person who pledges it before its maturity, as collateral security for a debt of his own of less amount than the face of the note, the pledgees, if they take it without notice, are to be deemed holders for value, and may maintain an action thereon for the amount due them upon the debt which it was pledged to secure. In the opinion of the court it was said : “ The evidence established that the plaintiffs received the note from the holder before its maturity, without any knowledge of the circumstances under which the defendants had delivered it to the payee, or the purpose for which the latter delivered it to the holder, and that it was held by the plaintiffs as collateral security for a valid debt due from the holder to them. Under the decisions of the court, *18 these facts proved that the plaintiffs were bona fide holders for value, and without notice, and were therefore entitled to recover to the extent of their debt for which the note was pledged as collateral security.”
In Duncan, Sherman & Co. v. Gilbert, 5 Dutch. (N. J. L. R.), 527, it is stated as the rule, that the holders of accommodation paper, assigned as collateral security, cannot recover of the accommodation maker any more than the consideration actually advanced.
In Atlas Bank v. Doyle, 9 R. I. 76, it was held that in case of accommodation paper pledged, the pledgee can ' recover of the maker only the amount of the debt due him from the pledgor.
And in Maitland v. The Citizens Bank, 40 Md. 540, the doctrine was laid down, that, in an action against the maker of a promissory note made for the accommodation of the indorser, brought by the indorsee to whom it was passed as collateral security for the payment of notes discounted by the indorsee for the benefit of the indorser, the measure of the plaintiff's right of recovery is the amount due on the debts embraced by the security; and that it is incumbent on the plaintiff to show what debts were intended to be secured by the note, and the amounts remaining due in respect thereof. “Indeed,” says Alvey, J., “ all that the plaintiff is entitled to recover is the amount due on the debts intended to be secured,it being conceded that the note was taken as collateral security merely. In such case, while the plaintiff is entitled to be treated as a holder for value, it is only so to the extent necessary to protect the debts intended to be secured.”
The note executed by the children of Handy, and pledged as collateral security, being only accommodation paper, a.nd being held in pledge by Sibley, with no other lien upon it, they might, after the payment of the note of $15,000, have demanded the surrender or cancellation of the collateral. But, by the assignment of June 9, 1883, it was agreed by and between Truman B. Handy, his children, and Eugene F. Williams, that there should be assigned and transferred to Williams ten thousand dollars of and in the note and mortgage of *19 $25,000 — the surplus over and above the $15,000 due Sibley— which surplus should be applied towards the payment of Williams’ claim against Handy; Williams, however, agreeing to extend the payment of his claim for one year from the date of the assignment. The record does not disclose that Williams had any knowledge of the power which Handy had vested in Sibley, to sell at public or private sale the collateral note and mortgage, and to become the purchaser thereof. The terms of the assignment of June 9th, and of Sibley’s written agreement attached thereto, would not bring such knowledge home to Williams any more than to the children of Handy, and it is among the agreed facts that none of the children, until long after the sale of July 21st, 1883, had notice or knowledge of the existence of such power of sale. So far as Williams knew, Sibley was a pledgee of negotiable paper secured by mortgage, with no special authority to sell the same as he would a pledge cf ordinary chattels, but only empowered to pursue the usual course of foreclosure proceedings. The surplus $10,000 was set apart to him, with the concurrence of all parties to the assignment, in view of a bona fide indebtedness to him by Handy, and for the valuable consideration that he would extend the payment of his claim against Handy.
There is nothing in the record inconsistent with the presumption that the assignment to Williams of June 9th, 1883, and the agreement by Sibley in relation thereto, were one and the same transaction. Williams having given a valuable consideration, Sibley was bound by his agreement to hold the note and mortgage, and deliver the same to Williams, upon receiving payment of $15,000 and interest. The proviso of Sibley, that nothing contained in the writing signed by him should prevent him from enforcing his security at any time, would not be notice to Williams of a special power of sale, but might convey the meaning that the one year’s extension of payment to Handy should not interfere with Sibley’s right to enforce his security at any time by a regular foreclosure of the mortgage.
As between Williams and Handy, and the children of Handy, the equities of the children in the surplus of the note and mortgage, after paying Sibley’s claim of $15,000, would, under *20 tbe assignment of June 9th', follow and inure to the benefit of Williams. Nor do we conceive that the rights of Williams should be concluded in equity, by the sale of the pledge under a power of which he was not cognizant at the time he agreed with Handy to extend the time for the payment of his claim against him, and which extension he might not have granted, if Sibley had definitely notified him, as he might have done, of' his power to sell and purchase the pledged collaterals. The existence of the power of sale was a fact, which, under the circumstances, Sibley, as a trustee, should have disclosed to Williams, and his failure to communicate the fact to him, was contrary to the principles of equity. In our opinion, the defendant in error, James W. Sibley, has no right to ask anything more than the full payment of his claim, -with interest; and Eugene F. Williams is entitled to receive the surplus of the mortgage of twenty-five thousand dollars, over and above the sum of fifteen thousand dollars and interest, owing by Truman B. Handy to the defendant in error.'

Judgment reversed, and judgment for Eugene F. Williams.