PAINE et al. v. LOEB.

(Circuit Court of Appeals, Second Circuit. July 18, 1899.)

No. 79.

CONTRACT—RIGHT TO ENFORCE—FRAUDULENT CLAIM OF AGENCY FOR UNDISCLOSED PRINCIPAL.

Plaintiffs, as brokers, entered into a contract for the purchase from defendant of certain bonds, claiming to act for an undisclosed principal, and stipulating that they should in no manner be held liable on the contract, which, as they had reason to believe, was made by defendant under a misapprehension as to the value of the bonds. In fact, they were acting for themselves, and there was no other principal. *Held*, that they could not maintain an action on the contract,—not as agents for an undisclosed principal, because no such principal existed, nor as principals, because, by their fraudulent misrepresentations, they had secured immunity from liability on the contract as such, and estopped themselves from claiming rights which were correlative with such liability.

In Error to the Circuit Court of the United States for the Southern District of New York.

Theron G. Strong, for plaintiffs in error.
Franklin Bien, for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges, and THOMAS, District Judge.

THOMAS, District Judge. The plaintiffs are bankers and brokers doing business under the firm name of Franklin Paine & Co., at Duluth, Minn., and the defendant is a broker at the city of New York. The city of Duluth, in 1896, had a population of about 55,000, and

was supplied with water and gas by the Duluth Gas & Water Company, whose works were capable of meeting the necessities of the city, were of the value of upwards of $1,500,000, and produced an annual net income of $115,000. In the year 1896 the company had outstanding two classes of bonds. The first class consisted of $295,000 first mortgage bonds, bearing 6 per cent. interest, and payable in 1908, while the second class comprised $1,513,000 5 per cent. interest-bearing bonds, secured by a second mortgage. It was the intention to retire the bonds of the first class with those of the second class, and the later bonds, by words indorsed upon them, tended to show that they were first mortgage consolidated bonds. The value of the first bonds was somewhat above par, and the interest had been paid duly on all bonds, except that in 1896 the interest upon the 5 per cent. bonds had been delayed from April 1st to May 15th. Franklin Paine, one of the plaintiffs, and the active party in the negotiations about to be stated, had been a broker in the city of Duluth for 10 years prior to the event herein involved. At some time in the forepart of September, 1896, the defendant, by letter, asked the plaintiffs to procure for him a bid on certain of the 6 per cent. bonds, which the plaintiffs were unable, apparently, to do. On September 17th the plaintiffs wrote the defendant as follows:

"A short time ago you asked us for a bid on $10,000 Duluth Gas and Water 6 per cent. bonds, which we could not make. If you can arrange to do so, please offer them to us at a fixed price, open for, say, three days. We have had some conversation regarding them with a party who says he might consider the purchase if the price suited him, though he does not wish to make a bid."

To this letter the defendant replied by telegraph on September 21st, as follows, "Will sell ten Duluth Gas sixes 85," and a letter of the same date contained a similar statement. To this offer the plaintiffs answered on September 21st that the person to whom they wished to offer them was absent, and that they would wire the defendant should such person, on his return, accept the bonds, or make an offer. On September 24th the plaintiffs wrote the defendant as follows:

"We wired you this a. m. as follows: 'Keep touch of bonds few days, if possible. Negotiations progressing.' We have offered them to two men, each of whom seems to think that he can at least get a bid for the lot in a short time, even if they cannot be sold at your price. Both of them expect to know this week what they can do. As, in the event of a sale to them, we do not wish to become responsible for the payment, we may ask you to place the bonds in some New York bank, say for one business day, to be delivered to order of American Exchange Bank, Duluth, upon payment of price agreed upon. In that case, if the buyers fail to close the deal, we would incur no loss."

The defendant answered this letter on September 28th as follows:

"Yours of the 24th came duly to hand. In reply beg to say that the simplest manner to handle the sale of the Duluth G. & W. bonds, in case you prefer it, is to let your bank authorize the payment for the same through their New York correspondent, and your purchaser can deposit the money with your bank in Duluth. This excludes all risk on your part."

On September 30th the plaintiffs telegraphed the defendant:

"Can get eighty-five for the bonds for November delivery. Answer."

The defendant expressed qualified consent to this on October 1st, and on the same date received from the plaintiffs the following:

"Only 'difference seems to be the question of accrued interest. If you prefer cash lump sum eighty-two hundred and fifty covering everything, think could make that deal. If you reply satisfactorily on either proposition, can close quickly."

To this the defendant telegraphed on October 2d:

"I sell you ten Duluth Gas & Water sixes for eighty-two hundred and fifty dollars, payable and deliverable prompt New York."

The bonds were delivered, and payment made, as suggested in the plaintiffs' letter of September 24th and the defendant's letter of September 28th. In fact, the defendant delivered 5 per cent. bonds under the misapprehension that they were 6 per cent. bonds, and on October 6th the plaintiffs advised the defendant of the mistake, and in their letter of that date the plaintiffs maintain the pretense that they had sold the bonds to third parties, and to this end the following language is used:

"In reply to your message this a. m., asking terms of settlement, we replied as follows: 'Five per cent. bonds unsalable. We sold sixes as offered. You receive back bonds, reimburse bank, and pay us difference to fill our sale.' This was before we had seen the buyers. Have seen them since, and they are disposed to insist upon delivery, though, of course, if you cannot deliver, we shall have to make some settlement with them. We depend upon your taking care of us to the extent necessary for settlement."

Again, on October 7th, the plaintiffs wrote the defendant:

"We sold them [referring to alleged purchasers] the bonds at 96, for which we will, if it will be of service to you, furnish certified statement from American Exchange Bank. * * * If we are forced to settle with the purchaser, we shall have to pay to market; while, if we were able to offer them a voluntary settlement, we think they would make us some concessions."

This claim of undiscovered principals was preserved in subsequent letters. In the end the bonds were received back by the defendant, the bank was reimbursed, and in the present action the plaintiffs sue to recover damages for the breach of the defendant's contract to deliver 6 per cent. bonds. To this point it is evident that the plaintiffs, skilled brokers, long resident of Duluth, knew that the defendant was seeking a bid for bonds of the water and gas company of that city, and that he contracted to sell the same at some 25 per cent. below their value, and that the plaintiffs represented that they were acting for third persons, and carefully stipulated that they should not be in any wise responsible for the bonds. But upon the trial the plaintiffs shifted their relation to the transaction, and claimed that they were acting as agents for themselves; and that they represented no principals. Hence, it is certain that the statements in their letters in that regard were utter falsehoods, and that they procured an exemption from personal liability by means of this false and fraudulent representation that they were mere agents. It is obvious that the defendant regarded the plaintiffs as mere agents in the transaction, and the plaintiffs, by careful misrepresentation, not only fostered this belief, but also secured all the immunity that could be conferred upon agents, even to total exemption from liability. The plaintiffs owed

the defendant the duty of practical integrity in the transaction. The plaintiffs undoubtedly knew, after September 21st, when the defendant offered to sell bonds to the amount of $10,000 at 82½ per cent. of their face value, which was 20 or 25 per cent. less than their actual value, that the defendant was acting upon some misapprehension, and the plaintiffs nicely adjusted their conduct to perpetuate such misapprehension. Although they claim to have been the real principals, they gave the defendant for some 10 days assurances that they were seeking diligently the conclusion of a contract of sale with third persons, and finally put such illusionary third persons in the position of the purchasers, and so attempted to shield themselves that they "would incur no loss."

Two general propositions of law sufficiently favorable to the plaintiffs may be stated. When a contract not under seal is made with an agent in his own name for an undiscovered principal, whether he describes himself to be an agent or not, either the agent or principal may sue upon it. Ludwig v. Gillespie, 105 N. Y. 653, 11 N. E. 835. In the case of written contracts the right of action follows the legal title, and the party entitled to maintain an action upon a written contract is the one to whom, by its terms, it is to be performed. Weed v. Insurance Co., 133 N. Y. 394, 407, 31 N. E. 231; Considerant v. Brisbane, 22 N. Y. 389. May the plaintiffs claim a right to maintain this action (1) as the agents of undiscovered principals or as the undiscovered principals, or (2) as the persons with whom the contract was made, and to whom performance was promised? If they may sue as agents, it is upon the theory that they have principals behind them, for whom they act in a representative capacity. Id. 395, 396, 398; Pitney v. Insurance Co., 65 N. Y. 18. If the plaintiffs sue as the undiscovered principals, the contract must be such that the principals, when discovered, are bound to the defendant for its fulfillment, for an unnamed principal, when revealed, is liable for the performance of the contract, unless the liability was limited expressly to the agent alone (Knapp v. Simon, 96 N. Y. 288, 289; Cobb v. Knapp, 71 N. Y. 348; Tuthill v. Wilson, 90 N. Y. 423; Kayton v. Barnett, 116 N. Y. 627, 23 N. E. 24); and it is equally true that the agent of an undiscovered principal is liable at the option of the opposite party (Argersinger v. MacNaughton, 114 N. Y. 535, 21 N. E. 1022; Tuthill v. Wilson, 90 N. Y. 423; Cobb v. Knapp, 71 N. Y. 348; Knapp v. Simon, 96 N. Y. 288), although it seems that the right of an agent, with whom the contract is made, to sue, may not be dependent upon his personal obligation to respond for the fulfillment of the contract (Considerant v. Brisbane, 22 N. Y. 391; but see dissenting opinion of Denio, J., at pages 398, 399). In the present case the plaintiffs expressly contracted that they should not be personally liable, and fraudulently represented that there were third parties upon whom all the responsibility should fall. This, in terms, relieved the plaintiffs of all contractual liability, and led the defendant to believe that there were responsible parties, who were bound personally for the fulfillment of the contract to the defendant. In fact, there were no such parties. Hence the plaintiffs should not be allowed to maintain this action as agents, because, to the extent above stated, such an action involves

necessarily a responsible principal, and, confessedly, no such principal exists. But, nevertheless, the plaintiffs could maintain the action as principals, notwithstanding the myth concerning the third parties (Patrick v. Bowman, 149 U: S. 411, 421, 422, 13 Sup. Ct. 811, 866), had they not contracted that they should not stand in the place of principals by exacting an agreement that they should bear none of the responsibilities of principals. In such case they would not be liable ex contractu, even if their fraud were discovered, although they might be liable for fraudulent representation. But the plaintiffs' possible answer may be that, notwithstanding the exemption obtained by them, they would have been liable as principal parties to the contract, if the facts had appeared. This is tantamount to saying that the discovery of their fraud would have resulted in their liability, and this position is equivalent to affirming their own fraud to obtain the necessary relation to the contract. The fact is that the plaintiffs intended (1) to take advantage of the obvious ignorance of the defendant as to the value of the bonds; (2) to shield themselves from all claim to respond to the defendant for any possible miscarriage of the contract; (3) to contract that certain unnamed third persons, nonexistent in fact, should be the real responsible parties of the second part. They now seek to assert that they are and were the real parties of the second part, and entitled to all the powers that were intended to be conferred upon them. To admit such contention would be to remove the estoppel which the plaintiffs by systematic untruthfulness have set up against themselves. If they are denied the right to sue, it is because they, by their own stipulations and representations, devested themselves of the capacity of proper suitors. These views must result in an affirmance of the judgment, with costs.