--------o--------

## WEAVER *v.* THE TRUSTEES OF THE WABASH AND ERIE CANAL.

PARTIES.—TRUSTEE OF AN EXPRESS TRUST.—CANAL.—The Wabash and Erie Canal being out of repair and unfit for navigation, and the trustees being unable to make the necessary repairs, an association was formed of those interested in the navigation of the canal, for the purpose of making a contract with the trustees to receive the tolls and keep the canal in repair. The members of the association subscribed certain sums, which, by the articles of association, were to be paid in assessments of a certain per cent., upon the call of a board of managers appointed by the association. It was further provided that if the assessments were not paid, the board of trustees of the canal should, upon request of the board of managers of the association, sue for such assessments in their corporate name, and hold the same for the use of the board of managers.

*Held,* that the board of trustees of the canal was made the trustee of an express trust, and might sue to recover an assessment in its own name.

*Held,* also, that the power conferred upon the board of trustees was coupled with an interest.

*Held,* also, that the objects of the association were not against public policy.

SAME.—The provision in section 4 of the code, that the words "'trustee of an express trust' shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another," does not restrict but rather enlarges the meaning of the words "trustee of an express trust," as used in a preceding part of the section.

APPEAL from the *Tippecanoe* Circuit Court.

ELLIOTT, C. J.—Suit by the *Trustees of the Wabash and Erie Canal* against *Weaver,* the appellant, to recover assess-

ments on stock subscribed by him in a co-partnership association, known as the "*Wabash and Erie Canal Company*," organized for the purpose of repairing and maintaining the *Wabash and Erie Canal* from *Terre Haute* to the *Ohio* state line, "as a permanent channel of transportation and inland commerce."

The appellant demurred to the complaint, for the following causes:

"1. There is a defect of parties, in this, that the said *Wabash and Erie Canal Company* should have been made a party defendant to answer as to its interest in the subject matter of the action."

"2. The complaint does not state facts sufficient to constitute a cause of action."

The demurrer was overruled, and the appellant declining to answer over, a final judgment was rendered against him, in favor of the plaintiffs, for six hundred dollars and costs. The ruling of the court on the demurrer raises the only questions presented here.

The complaint alleges, *inter alia*, that on the first day of *May*, 1866, the appellant and others, numbering over three hundred persons, entered into an agreement of co-partnership, which is copied at length and made a part of the complaint, consisting of a preamble and ten articles. The objects of the association are stated in the preamble, which is as follows:

"Whereas, by reason of recent injuries, by floods and otherwise, to the *Wabash and Erie Canal* and its feeders, in the State of *Indiana,* a larger sum of money is needed to put the same in good order and keep it in navigable condition than *Hugh McCulloch, Alfred P. Edgerton* and *Pliny Hoagland,* the present contractors for repairs, have at their disposal, derived from the revenues of said canal, or are willing to advance; and they are willing to surrender their contract with the board of trustees therefor, for the purpose of enabling a new company to be organized, with

larger means and more extended business interests and influence, which, under a longer contract, and upon more favorable terms, can secure the repair and maintenance of the canal from the state line, between the States of *Ohio* and *Indiana,* to such point south of *Lafayette,* and not further south than *Terre Haute, Indiana,* as may be agreed on, as a permanent channel of transportation and inland commerce; and whereas the maintenance of the canal is essential to the prosperity and business interests of the whole country through which it passes, for the purposes aforesaid, therefore the undersigned, to obtain and secure these desirable ends, and for no other purpose, hereby associate ourselves as partners, under the name and style of '*The Wabash and Erie Canal Company,*' to commence the business of repairing and maintaining said canal, during the period for which said contract may be obtained, upon the conditions and terms following, to-wit:"

The first article provides that *McCulloch, Edgerton* and *Hoagland* shall surrender their contract to the board of trustees, become parties to the new partnership, and contribute their material and personal property on hand, designed for the repairs of the canal, as capital in the new partnership, at its appraised value, &c.

The second and third articles are as follows:

"2. For the purpose of securing the objects of this company without embarrassment, and to inspire public confidence in its ability, it is agreed that the capital shall be two hundred thousand dollars, or as near that sum as it may be found practicable to make the same, divided into shares of one hundred dollars each; and the sums agreed to be contributed by the parties hereto are appended to their names respectively, and payments shall be made thereon, and the profits and losses of the adventure borne and shared, in proportion to the capital so contributed and paid in as aforesaid.

"3. In order to facilitate the raising of the money upon the capital so agreed to be contributed as aforesaid, in such

sums and at such times as the exigencies of the company may require,.to prevent delinquencies, and to enable the board of trustees of the *Wabash and Erie Canal* to have such canal kept and maintained in repair through their contemplated contract with this company, to the extent of the rights thereby to be conferred, so as to give them the full benefit of such contract, it is agreed that the executive committee hereinafter provided for, who shall be the authorized agents of this company for that purpose, may, in their discretion, assess calls upon the capital contributed and agreed to be paid as aforesaid, of not more than twenty per cent. for the first, and ten per cent. for any subsequent one, payable in not less than thirty days from the time the same is made, without any relief from valuation or appraisement laws; and in the event that the same are not promptly paid to said executive committee, the board of trustees aforesaid may, upon the request of said committee, enforce the payment of such assessments by suit in their corporate name against the respective delinquents, and hold the money collected.in trust for this company, and shall pay it over to said executive committee for expenditure under the contract so to be made for repairing and maintaining said canal as aforesaid. Provided, however, that nothing herein contained for the enforcement of calls from delinquents shall be construed to give said trustees any right to demand that assessments or calls shall be made, or money raised from the members of this company, or any control of money advanced or needed for repairs, otherwise than shall be agreed for in the contract to be made between them and the company as aforesaid."

Article four provides for the organization of a board of managers and the appointment by it of an executive committee and a general superintendent.

The sixth article declares that the contract to be made with the board of trustees of the canal "shall not bind the company to keep the canal in repair for any definite time, or to any agreed extent, unless the tolls and revenues

thereof shall be found sufficient to make the canal self-sustaining, unless the company shall choose so to do."

The other articles are not material to the questions involved here, and therefore need not be referred to.

It further appears by the complaint, that the company was duly organized on the 26th of *May*, 1866, by the election of a board of managers, the appointment of an executive committee and a general superintendent, as provided by the articles of association, and that on the 23d day of *June*, 1866, said company entered into a written contract with the trustees of the canal, which is also made a part of the complaint, and by which it is provided, among other things, "that the said board of trustees, for the purpose of preserving, as far as in their power, the navigation of that part of said canal from the lower lock, in the city of *Terre Haute*, to the *Ohio* state line," did thereby "set apart and apply, for the use of said *Wabash and Erie Canal Company* contractors, all the tolls and revenues to be derived or which may accrue from the above specified part of the canal," during the term of said agreement, with full power to collect and use the same for the purposes therein stated. In consideration whereof, the said canal company agree and bind themselves to maintain and preserve the navigation of that part of said canal herein before specified, from the first day of *July*, 1866, until the first day of *July*, 1878, and to keep and preserve the same in good order for use, with all its structures, within the limits specified, including locks, dams, dam abutments, aqueducts, waste weirs and embankments, and all the works appurtenant to said canal, and which the board of trustees are required to keep, maintain and preserve. It also provides that the collectors of tolls and revenues shall be appointed by the board of trustees, upon the recommendation of said canal company, who shall determine the number, location, compensation, time and manner of payment of the same, and that all the tolls and revenues of said portion of the canal shall be received and collected by the collectors so appointed, and shall be depos-

Weaver v. The Trustees of the Wabash and Erie Canal.

ited in such national or state banks, most convenient to the collectors' offices, as said company may select, to the credit of said board of trustees, for the use of the said canal company for the purposes therein stated and no other. It makes it the duty of the trustees to keep an accurate account of all such receipts and disbursements, and provides that all the moneys shall be applied to the uses and purposes contemplated in said agreements, and shall be held in trust by said trustees for such uses and purposes only. It provides for the application of the funds derived from tolls and other revenues to the repair of the canal, and the payment of all incidental expenses, including the salaries and pay of officers and other agents, and to the repayment to the company of the amounts advanced for the repair of the canal, with interest; also, to damages sustained by third parties, which are made a lien on a portion of the revenues of the canal, but not a personal charge against the canal company. And it expressly provides that neither said company, nor the members thereof individually, shall be liable for any claims of the State, or of the trustees of said canal, by reason of their inability to sustain the canal out of the net revenues thereof.

The complaint further alleges that immediately after the execution of said contract, the said company took the entire possession and control of that portion of said canal named in said contract, and still continues in the possession thereof, under said contract, and has/ ever since been and still is in the receipt of all the tolls, water rents and revenues of the same; that, owing to the heavy freshets and floods in the *Wabash* river, *Wildcat* creek and other streams, used as feeders to said canal, in the spring and summer of 1866 and the spring of 1867, the dam across the *Wabash* river at *Pittsburgh*, and that near *Lafayette, Indiana*, on the *Wildcat* creek, were washed away and other injuries caused to said canal, by reason whereof it has not been navigable from *Logansport* south to *Terre Haute* for more than a year prior to the commencement of this suit, and that said

canal company have been engaged in repairing the same in accordance with the terms of their said contract; that the expenditure of a large sum of money, to-wit, $75,000, was necessary to make said repairs and render the canal navigable, as provided in said contract; that, for the purpose of raising said money, the executive committee of said company made a call and assessment on the members thereof of twenty per cent. on the amount subscribed by them respectively, and subsequently a like assessment of ten per cent., and afterwards, on the 15th of *November*, 1866, said committee made a further and third assessment thereon of ten per cent., of all of which said *Weaver* had due notice; that said *Weaver* was a member of said company, and subscribed to the capital thereof the sum of fifteen hundred dollars, and that the assessments made against him thereon amounted to the sum of six hundred dollars, all of which he refused to pay, and that on the 26th day of *March*, 1867, the said executive committee duly requested the plaintiff to enforce the payment thereof by suit, &c.

Several objections are urged in argument to the complaint, which will be noticed in the order in which they are presented. The first is, that the canal company should have been made a party defendant to answer as to its interest in the suit. And it is argued in support of the objection, that the plaintiff sues simply as the trustee of the canal company, and has no power to maintain the suit except upon the request of the executive committee upon the assessments made by it; that if the plaintiff can recover without making the company a party, and it should subsequently appear that no assessment had been made by the committee, or if made, that the trustees had not been requested to sue therefor, the judgment so recovered would be no bar to a suit subsequently brought upon a proper assessment and request. This argument does not rest upon a solid foundation. It is true that under the articles of partnership, the trustees can only sue upon the request of the executive committee upon an assessment made by it; but

here it is expressly averred in the complaint that the committee made the assessment and afterwards requested the trustees to sue therefor. These are material, issuable averments, without-which the complaint would be bad. The facts so alleged stand admitted by the demurrer, and must therefore be assumed as true. If they were not true, *Weaver* could have defeated the action by taking issue upon them, and no reason is perceived for making the canal company a party defendant.

The second ground of demurrer is, that the complaint does not state facts sufficient to constitute a cause of action in favor of the plaintiffs, the canal trustees. And it is insisted that the facts alleged in the complaint do not show that the plaintiffs, in respect to the cause of action, are trustees of an express trust within the meaning of the code, so as to authorize them to sue for said assessments in their individual or corporate names; nor that they are real parties in interest in the subject of the action. These questions are certainly not entirely free from difficulty or doubt. The rule at common law required that the action should be prosecuted in the name of the party holding the legal title or interest in the cause of action; but under the code a different rule prevails. Sections three and four of the code provide that "every action must be prosecuted in the name of the real party in interest, except," that, "an executor, administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted. A trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another." The *New York* code contains precisely the same provision. Ours, in fact, is copied from it. And in *Stillwell* v. *Hurlbert*, in the Court of Appeals of that State, in which a deputy sheriff holding an execution took a bond to his principal, conditioned to indemnify the latter and all persons assisting him in the premises, it was held that an action would lie in the name of the sheriff for the

benefit of the deputy. HARRIS, J., said: "In respect to the deputy who held the execution, and who in fact received the bond, the plaintiff became the trustee of an express trust. The obligation was executed to him for the benefit of his deputy. It is the precise case for which provision is made in the 113th section of the code." 18 N. Y. 374. And so in *Considerant* v. *Brisbane,* 22 N. Y. 389, it was held that the agent of a foreign corporation might maintain an action in his own name upon a subscription note payable to him "as executive agent of the company," for stock of the corporation to be issued to the maker of the note, although the plaintiff had no personal interest in the note, on the ground that he was the trustee of an express trust, and could maintain the action under the code. In both of these cases, however, the obligation was made payable to the trustee, and hence they cannot be regarded as decisive of the question presented by the case at bar. Here, the obligation to pay the money is found in the agreement of partnership to which those composing the canal company are alone parties, and not in the contract between the company and the plaintiffs. It is the mutual obligation between the members of the canal company, by which each promises to his co-partners that he will pay to the executive committee of the company the assessments that may be made against him upon the amount of his subscription to the capital of the company. But it is further agreed, that in the event that such assessments are not promptly paid to said executive committee, the board of trustees, upon the request of said committee, shall enforce the payment thereof by suit in their corporate name, and hold the money when so collected in trust for the company. And the question still remains, does this provision make the board of trustees of the canal trustees of an express trust, within the meaning of the fourth section of the code, and enable them to enforce the payment of the assessments by suit in their corporate name for the use of the canal company? An express trust

is simply a trust created by the direct and positive acts of the parties, by some writing, or deed, or will. And it is to be observed in reference to the fourth section of the code, that it does not assume to define the meaning of the term, "trustee of an express trust," in its general sense; it simply declares that those words, within the meaning of the section, "shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another." Evidently, this provision was not intended to limit the general meaning of the term "express trust," or to confine the operation of the statute to the particular class of cases referred to, but rather to enlarge its sense by including also that class within it. Here, by the mutual agreement of the members of the canal company, express authority is conferred by their articles of association upon the board of trustees of the canal to enforce the payment of these assessments, upon the request of the executive committee, by suit in their corporate name, in trust for the use and benefit of the company. The reason for the creation of the trust is obvious. The canal company was organized for the sole purpose of leasing the canal, and obligating the company to put it in proper repair for navigation, and receiving the rents, tolls and revenues thereof.

The condition of the canal was such as to require the expenditure of a large sum of money to render it navigable, which was to be contributed by the members of the company, in proportion to the amount subscribed by them respectively to the capital of the company, and to be paid upon calls of the executive committee. The company was not incorporated, and could not enforce the payment of these calls or assessments by suit in their co-partnership name. The members of the company numbered between three and four hundred persons, scattered over a wide extent of territory, embracing a large number of counties, all of whom must have been made parties to a suit for contribution, and brought before the court. Such a process would unavoidably be so slow, tedious and expensive as to render

it inadequate, if not useless, and greatly tend to defeat the very objects of the organization.   Under such circumstances, it was peculiarly proper that the company in its organization should, if possible, confer upon a trustee the power to enforce the payment of the assessments by a suit in his own name, in trust for the use and benefit of the company.   We think the authority conferred on the trustees of the canal constituted them trustees of an express trust within the meaning of. the code.   We are also of opinion, that the power thus conferred on the board of trustees of the canal was coupled with an interest in them, in their trust capacity.   A former company had contracted to keep the canal in repair for navigation, and had done so until the spring of 1866, when it sustained such material injury by floods as to render it unfit for navigation, and to require in its repair an expenditure of a much larger sum of money to fit it for navigation than the company had derived from its tolls and revenues, or than the members thereof were willing to advance from their private means. It was the duty of the trustees, under their trust, to keep the canal in navigable order and repair, if it could be done by its tolls and revenues, but they did not possess the means, belonging to the trust, sufficient to repair the injuries to it caused by the floods of that year.   Merchants, tradesmen and others, residing at different places along the line of the canal, and especially those engaged in trade and commerce, were greatly interested in its repair.   The former company agreed to surrender their contract with the trustees, and the new company was organized with a large capital for the sole purpose of procuring a contract from the trustees for the repair of the canal, and the advancement of the means necessary for that purpose, in consideration that they should receive the tolls and revenues of the canal to reimburse them for the expenditures so made.   It is apparent, both by the partnership agreement and the contract between the company and the trustees, that it was intended that the company should advance the

necessary amount to put the canal in repair, and it may fairly be inferred that the contract was made with a direct reference to the provisions in the articles of partnership conferring on the trustees the power to enforce assessments for repairs, by suit in the corporate name, and that it formed one of the inducements to the contract on their part, as the means by which they would secure the repair of the canal. It, in effect, forms a part of the contract to which the trustees are parties, and in which they have an interest.

It is also urged that the organization of the canal company and their contract with the trustees are void, as being against public policy. We see nothing in either to justify this position. It appears, from both of those instruments, that the canal had failed to be self-sustaining, or, in other words, that its tolls or revenues had failed to pay the incidental expenses and keep it in repair. The bond-holders are only interested in its being kept in repair, as a source of revenue to them, over and above the amount necessary for repairs and incidental expenses, and if its entire revenues are required for these purposes, it is no longer a matter of interest to them, and it cannot be expected that they will advance means for repairs. Under such circumstances, we do not perceive that any principle of public policy is violated in the advancement of the means for the repair of the canal by those interested in its navigation, or who look to it as a channel of commerce, or in the fact that they are authorized to receive its tolls and revenues as a means of reimbursing them, as far as it may be, for the amount so advanced.

The sixth article of the partnership agreement provides that the contract to be made with the board of trustees shall not bind the company to keep the canal in repair for any definite time, or to any agreed extent, unless the tolls and revenues thereof shall be found sufficient to make the canal self-sustaining, unless the company shall choose to do so.

And it is claimed that the executive committee, in violation of that stipulation, in making the contract, bound the company to keep the canal in good repair for the period of twelve years, without regard to the sufficiency of the tolls and revenues for that purpose. Wherefore, it is insisted that the executive committee exceeded the powers conferred on them, and that the contract is thereby rendered void. Without deciding what would have been the effect of such a violation of the partnership agreement, it is sufficient to say that we do not understand the contract as being in conflict with it. There is nothing in the partnership agreement prohibiting the executive committee from binding the company to repair the canal and put it in navigable order, without regard to the question as to the sufficiency of the revenues for that purpose. Indeed, the partnership agreement clearly indicates that it was the purpose of the company to repair the breaches then in the canal and put it in a navigable condition, and to provide the means therefor, if necessary, by assessments on the members of the company; and it is expressly provided, in the sixth article of the contract with the trustees, that neither the company, nor the members thereof, shall be individually liable for any claims of the State, or of said trustees, by reason of their inability to sustain the canal out of the net revenues thereof.

We think the court committed no error in overruling the demurrer to the complaint, and that the judgment should be affirmed.

The judgment is affirmed, with costs.

*R. P. Davidson* and *W. Wallace*, for appellant.

*H. W. Chase* and *J. A. Wilstach*, for appellee.