SWENSON, RESPONDENT, *v.* KLEINSCHMIDT ET AL.,
APPELLANTS.

10   473
12   466
26*  198
31*   69
10   473
23    63

CONVERSION — *Evidence* — *Trustee of an express trust.* — Writings which had been given by third parties to the plaintiff in conversion, authorizing him to dispose of their portion of the converted property and to collect the proceeds, but which indicate no intention to transfer the title, are inadmissible as evidence tending to establish plaintiff's title to such portions of the property in controversy. Nor would such writings be admissible as evidence tending to make plaintiff a trustee of an express trust so as to enable him to maintain conversion without joining the persons for whose benefit the action was brought, as provided by section 6 of the Code of Civil Procedure. (DE WITT, J., *dissenting.*)

PLEADING — *New matter* — *Replication* — *Evidence.* — Where new matter constituting a counter-claim has been pleaded in the answer, a replication by plaintiff unconditionally denying the same raises an issue only as to the truth of such new matter, and upon the trial, evidence on behalf of the plaintiff which admits the truth of such new matter and seeks to avoid the same by proof of facts not pleaded is inadmissible. (*Mauldin* v. *Ball*, 5 Mont. 96, cited.)

EVIDENCE — *Conversations* — *When admissible.* — Evidence of a conversation in which plaintiff demanded of one of the defendants a sum of money less than the amount sued for is admissible on behalf of the defense, in the absence of any evidence that the demand was made as a compromise offer or in any negotiations for a peaceful settlement.

*Appeal from Third Judicial District, Deer Lodge County.*

The cause was tried before DURFEE, J. Plaintiff had judgment below.

*W. H. Trippett,* and *Robinson & Stapleton,* for Appellants.

The contract under which plaintiff cut the wood was one of hire of the services of plaintiff and others engaged with him. The wood belonged to the Butte Manufacturing Company as cut, and the plaintiff cannot recover for it. (See 2 Parsons on Contracts [5th ed.], p. 54; Benjamin on the Law of Sales, §§ 94–98, 101, 104, 156–159, and n. *y*; *Higgins* v. *Murray*, 73 N. Y. 254.) If the contract was not one for the sale of goods —personal property—it was one of work and labor, and the price per cord for the wood was simply the means of adjusting the amount of compensation; and if it was for work and labor, the right and title to the wood was not in the plaintiff, and the authorities above as to the question of the Statute of Frauds are applicable. The court erred in admitting in evidence the instruments set out in defendants' bill of exceptions to prove title in plaintiff to the wood cut by Lindguist and Mangarud—

said instrument simply makes plaintiff the agent of said parties, and does not transfer the title to the wood—nor is it any evidence of possession in plaintiff. This is all the evidence that plaintiff offered as to title or possession. Baders' testimony should not have been withdrawn from the jury; there was no question of a compromise, or other thing to make it obnoxious to any rule of evidence; it showed what plaintiff claimed as due him on the wood.

*F. W. Cole,* and *H. R. Whitehill,* for Respondent.

The respondent and his assignors had a right to the possession of the wood cut until the amount due them was paid. They were entitled to the possession of the wood not only under the contract, but also had a lien on the wood for work done thereon. The Butte Manufacturing Company did not own the wood. It was on the public domain before it was chopped, and the woodchopper reduced it to his possession as soon as chopped, and was entitled to hold it until his work and labor had been paid for. The Butte Manufacturing Company could only transfer to Kleinschmidt & Co. the right it had under the contract and the law, and neither one had the right to convert the wood until the claims of the choppers had been satisfied. (2 Jones on Liens, p. 509, § 731; *Arians* v. *Brickley,* 65 Wis. 26; 56 Am. Rep. 611.) The objection made that the assignors of the plaintiff did not authorize the plaintiff to sue for the wood cut by them is frivolous. The transfers offered in evidence show that the plaintiff was entitled to recover anything that was due to the assignors, and make the plaintiff a trustee for the assignors of an express trust. No particular form is necessary, and a transfer may be made by parol. (1 Am. & Eng. Encycl. of Law, 834, "Assignment.")

Harwood, J.—Action for damages for taking and conversion of personal property.

The plaintiff for cause of action avers that on June 1, 1887, he possessed and owned 250 cords of wood of the value of $287.50; that between said date and October 20, 1887, defendants unlawfully took and conveyed away said wood and converted the same to their use, to plaintiff's damage in said sum,

for which judgment is demanded, with interest at ten per cent per annum from the time of such alleged taking.

Defendants made answer denying the allegations of the complaint; and further alleged as new matter of defense or counter-claim a transaction connected with the cutting of said wood, in effect as follows: That defendants, Albert Kleinschmidt and Addison Smith, were copartners, doing business in the firm name of A. Kleinschmidt & Co.; and that during the winter of 1885–86 the Butte Manufacturing Company, a corporation existing under the laws of Montana, employed plaintiff and L. Mangarud and C. I. Lindguist, as partners, to cut wood for said company at an agreed price of $1.15 per cord for cutting and packing the wood; that said partners under said agreement cut the wood in question, but the same was only 205½ cords in quantity, instead of 250 cords as alleged by plaintiff; that while plaintiff and his said partners were cutting said wood, defendants, for said Butte Manufacturing Company, furnished plaintiff and his said partners, at their instance and request, goods, wares, and merchandise at and for the price of $153, and that plaintiff and his said partners became indebted to the Butte Manufacturing Company therefor in said sum; that during the year 1886 said debt owing by plaintiff and his said partners for said goods was assigned by the Butte Manufacturing Company to defendants. Defendants' answer further alleges that plaintiff and his said copartners became indebted to one Phil. E. Evans in the sum of $9.07, which is alleged to have been assigned to defendants, A. Kleinschmidt & Co., and that plaintiff and his said partners assumed and agreed to pay the same. Defendants also allege that defendants, A. Kleinschmidt & Co., paid $10.74 at the instance and request of plaintiff and his said partners for hauling said goods to them, which plaintiff and his said partners agreed to pay. Defendants further allege that long before the commencement of this action all of said indebtedness of plaintiff and his partners was assigned to and became the property of defendants, A. Kleinschmidt & Co., and that all of said wood was sold to and became the property of the same defendants prior to the commencement of the action; that said wood was not packed or piled, and that in order to ascertain the amount of said wood defendants were compelled

to pay, and did pay, fifteen cents per cord for packing the same, amounting to the sum of $30.80. In conclusion defendants offered to pay plaintiff the sum of $32.33, which they admitted was a balance due plaintiff and his said partners for cutting said wood.

Plaintiff by replication denied said matters set up by the answer, alleging, however, that said wood was cut by plaintiff and said Mangarud and Lindguist, not as partners, but each cutting for himself.

Upon the issues thus formed the case was tried, and during the course of the trial, as appears by defendants' bill of exceptions, plaintiff was sworn, and while testifying on his own behalf, said the wood in controversy was cut by himself, Mangarud, and Lindguist for the Butte Manufacturing Company; that said parties were chopping together, and they chopped about 250 cords; that plaintiff chopped 120 cords, and one of the others chopped about 75 or 80 cords, and the other from 85 to 90 cords; that these choppers had no contract with defendants, but their "contract was with the Butte Manufacturing Company at the agreed price of $1.15 per cord, and that the company was to furnish grub, and would receive the wood about June 1, 1886;" that they "chopped till about February 16, 1886, and quit because the company busted up." He said: "Nobody offered to pay us. I never received anything but goods, about $150 worth I think, for myself and the two men that were with me. Each man chopped for himself. I am suing for what they chopped too. The goods we received were in part payment for the wood. The amount was to be deducted." Plaintiff then offered in evidence what he claimed was a transfer from said Mangarud and Lindguist to him of the wood which each of them cut. The papers offered are in terms as follows:—

"DEER LODGE, April 24, 1886.

"This is to certify that I, the undersigned, have given S. Swenson, of Deer Lodge, full authority to dispose of all the wood belonging to me in Mt. Powell gulch in Deer Lodge County, and collect money for the same if sold. The wood is marked thus: 'C–I–L.'

(Signed,)                              "C. LINDGUIST."

"DEER LODGE, April 24, 1886.

"This is to certify that I, the undersigned, have turned my wood over to S. Swenson, of Deer Lodge, and given him full authority to dispose of it in any way he may deem satisfactory. Also, collect money for me for the same if sold, all wood belonging to me in Mt. Powell wood camp, and are marked thus: 'L–M.'

(Signed,)                          "L. J. MANGARUD."

These papers were offered in evidence, as the bill of exceptions recites, "to show title in plaintiff to the wood cut by said parties," and to the introduction of which the defendant objected, for the reason that the same were incompetent and insufficient to show title in plaintiff to said wood. The court overruled the objection, and admitted said papers to be read in evidence to the jury; to which ruling defendants excepted, and assign the same as error.

Plaintiff's action is for damages for the conversion of 250 cords of wood, his property. He must prove the essential allegations of his complaint to make a cause for recovery. As said by Bishop, "to maintain this particular action (trover), he must have a right both to the property and to the possession of it." (Bishop's Non-Contract Law, 396.) Plaintiff has just shown by his testimony that when this wood was cut, certain separate described portions of it was not his property, but was the property of others. To make out his case as to that wood plaintiff must show conveyance of title to him. This he undertook to prove by introducing said papers. But said papers do not show a transfer of title. They constitute mere revocable grants of authority or agency to plaintiff, to do stated acts in relation to the wood belonging to said Lindguist and Mangarud. The terms used indicate no intention to transfer the property. The contrary is shown. In the first, the maker gives the plaintiff authority to dispose of all the wood belonging to him, "and collect money for the same if sold." In the second, the plaintiff is authorized by the maker to dispose of the wood, "and collect the money for me for the same, if sold." If said papers were sufficient to show, or tended to show, a transfer of title in this action, the same papers ought certainly to be good evi-

dence for the same purpose in case said Lindguist or Mangarud had brought an action against plaintiff for recovery of possession of their wood respectively, or for damages for the conversion thereof by plaintiff. Said papers can in no way be construed to have such an effect. So far as said papers show, the makers of them still own the respective portions of the wood as plaintiff testified. Plaintiff's counsel contend that said papers made plaintiff "trustee of an express trust" for the other owners of respective portions of said wood (Code Civ. Proc. § 6); but such position cannot be sustained. (Pomeroy on Rights and Remedies, 171, et seq.; Bliss on Code Pleading, §§ 54, 55, 56, 57, 262, and cases cited.) It was error to admit said writings as evidence tending to establish plaintiff's title to the respective portions of the wood in controversy, which he had testified was the property of Lindguist and Mangarud.

After plaintiff had testified that he and Lindguist and Mangarud had cut said wood for the Butte Manufacturing Company, under a contract with said company, for the price of $1.15 per cord, "and that the company was to furnish grub and would receive the wood about June 1, 1886," and that about $150 worth of goods were received by plaintiff and Lindguist and Mangarud, and that "the goods were received in part payment for the wood," plaintiff's counsel then asked him "to explain for what reason he was not indebted to the Butte Manufacturing Company. Defendant objected to the witness responding to that question, for the reason that such inquiry was incompetent and not warranted by the pleadings. The objection was overruled, and defendant excepted to such ruling. In response to said question plaintiff testified "that the contract was that said company was to furnish grub and receive the wood; that by their failure to fulfill the contract they had nothing left but the wood, and as it was, they were thrown out of everything, and that they were idle for awhile." Defendant then moved the court to strike out said testimony. This motion the court overruled, to which ruling defendant excepted, and assigns the same as error.

Was that proof warranted by the pleadings? By reverting to the pleadings it is seen that plaintiff alleged as his cause of action these simple facts, that he owned and possessed a certain

quantity of wood of a certain value, and that defendants carried away and converted the same to their own use, to plaintiff's damage in a certain sum, for which he demanded judgment. Defendants answered plaintiff's alleged cause of action, denying his allegations, and setting forth as new matter or counter-claim a state of facts, which, if true and of binding force, would at least modify the amount which plaintiff ought to recover. By defendants' answer an issue of fact was raised as to the truth of the allegations of the complaint, and also a new state of facts affecting the rights of the parties to the controversy was introduced. The new matter or counter-claim set up in the answer must be *controverted* or it will be deemed true. (Code Civ. Proc. § 109.) How shall the new matter be controverted? To controvert means more than to deny. (Webster's Dict.; Century Dict.) If the allegations constituting new matter or counter-claim are deemed untrue by plaintiff, he will of course controvert the same by direct denial; then the issue on that point is as to the verity of such matter, that is, as to the existence of the facts stated as new matter or counter-claim. But the new matter stated by way of defense or counter-claim may be true, and yet have no binding force by reason of the existence of another fact, or state of facts, which occurred in relation to the same. How, in such a case, shall the plaintiff controvert the new matter of defense or counter-claim? Shall he make a direct and unqualified denial of such matters in his replication, and then on the witness stand admit the truth of what he denied by replication, and then introduce proof of a new state of facts, foreign to the pleadings, which occurred in relation to the new matter of defense or counter-claim, and which as he contends destroyed the binding force thereof?

Aside from the duplicity involved in such a position, is not a denial of a transaction, by necessary and inevitable implication, a denial also that any facts exist relating to or growing out of such a transaction? How can there be a state of facts growing out of, or relating to, or affecting that which never existed? How can there be a breach, or satisfaction of a contract or transaction which was never engaged in? The pleader not only stands in such an attitude as a logical sequence arising from direct unqualified denial of a transaction or contract alleged

as new matter of defense or counter-claim, but he raises an issue of no consequence in the trial, for he will upon the trial admit what he denied, as he must admit it, in whole or in part, to show that other facts arose in relation to such new matter or counter-claim which satisfied or destroyed the obligation arising therefrom. Again, the issues are materially different under the one or other method of controverting new matter of defense or counter-claim. If direct denial is made, the issue raised is as to whether such facts exist or not. If, however, the replication controverts the counter-claim or new matter of defense, by alleging a state of facts which would, when proved, destroy the force of such new matter or counter-claim, the issue is then shifted to the question of the existence of the latter facts, by which the new matter or counter-claim would be avoided. This latter issue is raised by an assumed denial of new matter stated in the replication. "The statement in the replication of matter in avoidance shall on the trial be deemed controverted by the adverse party." (§ 109, Code Civ. Proc.) Again, "an issue of fact arises . . . . upon new matter in the replication." (§ 248, Code Civ. Proc.) We think that to allow a party, who, by replication, makes an unconditional denial of facts constituting new matter of defense or counter-claim, to admit those facts on the trial, and then under color of such former denial to enter upon the proof of facts material to the rights of the parties, and foreign to the pleadings, by way of avoidance, would be paradoxical and contrary to the provisions and spirit of our Code of Civil Procedure. (*Mauldin* v. *Ball,* 5 Mont. 96.) We think the court erred in admitting the said evidence objected to as not warranted by the pleadings.

There is one other assignment of error which we will notice. During the course of the trial P. Bader, testifying in behalf of defendants, stated that on a certain occasion he heard a conversation in defendants' store between plaintiff Swenson and defendant Strauhal, in which "Swenson asked Strauhal if he would take his wood, and Strauhal told him he would, but it was not piled, and Swenson said he thought it ought to be worth $1.15 outside of piling. Strauhal said he could get it banked for that price. He told him he would find out." "In the second conversation Swenson asked Strauhal if he would

pay him, and he told him the wood was not measured yet. Swenson said he wanted $74 or he would sue." Defendants' bill of exceptions recited that plaintiff objected to said evidence, "and the court ruled that all evidence with reference to the offer to take $74 be stricken out, and the same was withdrawn from the consideration of the jury." The objection to said evidence assigns no ground for the exclusion of the same. Nor does it appear on what ground said evidence was stricken out and withdrawn from the consideration of the jury. It is asserted by respondent's counsel in their brief that said evidence was withdrawn from the jury because the court previously ruled that the conversation was concerning a compromise. The bill of exceptions is quite elaborate in setting out the evidence of two conversations to explain the point of defendant's exception. But nowhere in said evidence is there an expression showing that the demand of plaintiff for $74 from defendant Strauhal, in payment for the wood cut by plaintiff, was made as a compromise offer, nor that said statements were made while negotiating for a peaceful settlement, nor in view of any compromise. The evidence is a plain recital of a demand by plaintiff upon one of the defendants for the payment of a certain sum in settlement, adding that if the same was not paid he would sue. There are no expressions which indicate that plaintiff was offering to take anything less than his due, nor that in making such demand he was offering to sacrifice anything whatever. We must presume that in settling the bill of exceptions the court made the same conform to the truth. According to the recitals therein, said evidence was clearly admissible, and the order withdrawing the same from the consideration of the jury was error. (Greenleaf on Evidence, § 192; Best on Evidence, 510.)

It is ordered that the judgment appealed from be, and the same is hereby reversed, with costs, and the cause is remanded for trial *de novo*.

BLAKE, C. J., concurs.

DE WITT, J. (*concurring*).— While I concur that the cause must be reversed, some views have been expressed from which I must record a dissent.

The appeal is on the judgment roll. The only questions presented are in a bill of exceptions. The only evidence before us is that contained in the bill to explain the points of the exceptions. The first point is the objection that the writings offered and received in evidence "were incompetent and insufficient, and did not show any title in plaintiff." Whether these writings were alone sufficient to show title, whether they were conclusive, whether they wholly proved plaintiff's right to sue, is not before us for determination. The whole evidence is not before us. We do not know what plaintiff proved as to the essential allegations of his complaint, outside of the writings.

The question for determination under the exception is, were the writings competent as tending to prove what plaintiff claimed for them? that is, as establishing a title in plaintiff against trespassers for the purposes of the action. Whether they were sufficient is another matter to be taken in connection with the whole evidence, which is not before us. Did the writings tend to show that plaintiff had a right of action for the conversion of the wood? That the writings may have been revocable is not material in the absence of any claim that they had been revoked, and in an action between plaintiff and trespassers, and where no question is raised between plaintiff and Mangarud and Lindguist. The writings confer upon Swenson, plaintiff, the right to dispose of the wood. He alleges in his complaint that he was in the lawful possession of the wood. We do not know what evidence he offered in other parts of the trial of the fact of possession. We speak now, for the moment, only of his right of possession. Having the right to dispose of, what does "dispose of" mean? Webster's Dictionary defines the term, "to determine the fate of; to exercise the power of control over; to fix the condition, application, employment, etc., of; to direct or assign for a use." With the idea of the term "dispose of," it can be said without much hesitation that Swenson had the right of possession of the wood. But did these writings tend to show title in plaintiff? "Title" must mean title for the purposes of the action against the alleged trespassers. "Title" here means, I take it, much the same as "property," when that word is used to designate the interest which one has in a thing, in distinction to the use of the word

as signifying the thing itself. Mr. Bishop says, speaking of trover: " Yet to maintain this particular action, he must have a right both to the property and to the possession of it." (Non-Contract Law, § 397.)   What is property, as to things personal or title?   Bouvier's Law Dict. says: " Property in personal goods may be absolute or qualified, . . . . because more persons than one have an interest in it, or because the right of property is separated from the possession.   The same authority says of "title": " In general, possession constitutes the criterion of title of personal property, because no other means exist by which a knowledge of the fact to whom it belongs can be attained."   Now, those writings offered in evidence tended to show the lawful possession which was alleged.   A lawful possession was one of the elements of a special or qualified title or property against alleged trespassers, which it is claimed the plaintiff must have; and therefore evidence of such lawful possession was competent in the chain of testimony.   I am of opinion that the writings were at least one step in the proof of a title as trustee of an express trust, and if Swenson, plaintiff, were trustee of an express trust, that is one of the facts establishing his cause of action.   Whether the writings alone were sufficient to establish the existence of an express trust is not before us.   I am satisfied that they tended in that direction, and for that reason were competent.   The writings were informal; but substance, and not form, is material.   (1 Am. & Eng. Encycl. of Law, 835; Voorhies' Code of Procedure, N. Y. § 111, p. 93.)   There is no substantial difference between our statutes and those of the States from which I cite the following cases: *Considerant* v. *Brisbane,* 22 N. Y. 389; *Weaver* v. *Trustees,* 28 Ind. 112; *Tyler* v. *Houghton,* 25 Cal. 29; *Smith* v. *Logan,* 18 Nev. 152; *Wetmore* v. *Hegeman,* 88 N. Y. 69, and cases cited; *Reed* v. *Harris,* 7 Rob. (N. Y.) 151; *McKee* v. *Judd,* 12 N. Y. 622; 64 Am. Dec. 515; *Richtmeyer* v. *Remsen,* 38 N. Y. 206, citing, *Haight* v. *Hayt,* 19 N. Y. 464; *Hoyt* v. *Thompson,* 5 N. Y. 347; *Greene* v. *Niagara Ins. Co.* 6 Hun, 131; *Hoogland* v. *Trask,* 6 Rob. (N. Y.) 540; *Allen* v. *Brown,* 44 N. Y. 231; *Robbins* v. *Deverill,* 20 Wis. 158; Deer. Code Civ. Proc. Cal. §§ 367–369, notes; Voorhies' Code of Procedure, N. Y. §§ 111–113, notes; Pomeroy's Remedies, §§ 132,

133, 172, and cases cited. In accordance with the views above expressed and the authorities cited, and in consideration of the fact that plaintiff was undertaking to prove a case against alleged trespassers, and not against Mangarud and Lindguist, I am of opinion that there was no error in admitting in evidence the writings in controversy.

As to the second point discussed by my associate, Mr. Justice HARWOOD, I concur in the conclusion he reaches. And also as to the third point — the error in excluding the evidence of Bader. As to that I will add a word. If Swenson offered to take $74, and it was clearly a compromise proposition, the evidence of such offer was not admissible. If it were a remark that he claimed only $74, and would take that amount, and such remark was an independent fact, disconnected with the proposition to compromise, it was competent. (*Williams* v. *Thorp*, 8 Cowen, 202, n., and cases reviewed; *Harrington* v. *Inhabitants of Lincoln*, 4 Gray, 566; 64 Am. Dec. 95; *Reynolds* v. *Manning*, 15 Md. 526; *Paulin* v. *Howser*, 63 Ill. 312.) It does not appear by the bill of exceptions that it was a compromise proposition. It was not objected to as such. The record shows simply that the evidence was objected to, without purporting to give any reasons whatever for the objection. That is not a good objection. (*In re Thompson*, 9 Mont. 387, citing, *City of Helena* v. *Albertose*, 8 Mont. 499.) I agree to a reversal of the judgment on these latter points, and state my dissent from the first point, for the reason that the proposition therein involved becomes material on a retrial of the case in the District Court.