from November 1st to November 13th, inclusive, for use and occupation at the rate reserved as rent by the former lease, and paying, also, the reasonable and proper expense to the defendant of preparing and executing the new lease. By the judgment appealed from the defendant has recovered for the use and occupation of the premises from November 1, 1907, at the rate of $1,200 per annum, which the court deemed to be a reasonable rental. This was upon the theory that the plaintiff had forfeited all claim to the building, as well as to a renewal of the lease, and was therefore bound to pay upon the combined value of both house and lot. What has already been said will serve to show that this judgment cannot be sustained. Our attention has been called to certain apparent inconsistencies in the findings. Some of these are unimportant, and where they are both important and irreconcilable we have given to the appellant the benefit of those most favorable to him. Elterman v. Hyman, 192 N. Y. 113, 84 N. E. 937, 127 Am. St. Rep. 862. Much stress is laid upon one finding, to the effect that the delay of the appraisers in coming to an agreement as to the value of the lot of land and the building was caused by plaintiff. This finding is wholly unimportant, because neither party claimed any default by reason of the delay, and its effect is wholly nullified by the finding that the appraisal was duly accepted by both parties as a full compliance with the terms of the former lease, and by the further finding that the plaintiff fulfilled all the requirements, covenants, and conditions of the original lease.

It follows that the judgment appealed from must be reversed, and a new trial granted, without costs in this court to either party. All concur.

---

MUTUAL LIFE INS. CO. OF NEW YORK v. NICHOLAS et al.

(Supreme Court, Appellate Division, First Department. April 7, 1911.)

1. MORTGAGES (§ 33*)—DEED AS SECURITY.

An instrument, in form a deed, given as security for payment as money, as shown by a letter given back by the grantee, providing for a reconveyance on payment of the money, is a mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 67–82; Dec. Dig. § 33.*]

2. MORTGAGES (§ 171*)—RECORDING OF MORTGAGE AS DEED.

The recording as a deed, without the defeasance clause, of an instrument in form a deed, but in fact a mortgage, gives the mortgagee no benefit of the recording act.

[Ed. Note.—For other cases, see Mortgages. Cent. Dig. §§ 392–409; Dec. Dig. § 171.*]

3. MORTGAGES (§ 171*)—RECORDING—NECESSITY AS AGAINST JUDGMENT CREDITORS.

A mortgage in the form of a deed, though its recording as a deed gave the mortgagee no benefit of the recording act, is valid against subsequent judgment creditors of the mortgagor, if not invalid because of nonpayment of the mortgage tax.

[Ed. Note.—For other cases, see Mortgages. Cent. Dig. §§ 392–409; Dec. Dig. § 171.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. TAXATION (§ 533,* New, vol. 11, Key No. Series)—MORTGAGES—ADMISSIBIL-
ITY IN EVIDENCE.

Under Tax Law (Consol. Laws 1909, c. 60) §§ 251–254, 257, 258, 265, 266,
relative to a tax on mortgages recorded after July 1, 1906, the tax is on
the mortgage, and not on the recording thereof, so that the provisions for
a mortgage executed after such date, on which the tax has not been paid,
being unenforceable and inadmissible in evidence, apply, though the mort-
gage has not been recorded.

5. TAXATION (§ 533,* New, vol. 11, Key No. Series)—MORTGAGES—ADMISSIBIL-
ITY IN EVIDENCE.

Under Tax Law (Consol. Laws 1909, c. 60) §§ 251–254, 257, 258, 265,
266, relative to a tax on mortgages recorded after July 1, 1906, while a
mortgage executed after such date is unenforceable and inadmissible in
evidence so long as the tax is unpaid, yet no duty to record the tax forth-
with being imposed, and there being no provision that failure to do so
and pay the tax, payable when the mortgage is recorded, shall render the
mortgage void, the mortgage may be made enforceable at any time by re-
cording it and paying the tax thereon.

6. MORTGAGES (§ 417*)—RIGHT TO FORECLOSE—TRUSTEES—SEALED INSTRU-
MENT—"EXPRESS TRUST."

The rule that no one but a party to a sealed instrument can sue to en-
force it will not prevent enforcement of a mortgage in terms to W., but
in fact for the benefit of a bank, of which W. was agent, because there
was no actual consideration from W., and a seal no longer conclusively
imports a consideration, but W., while not the trustee of an express trust,
within Code Civ. Proc. § 449, authorizing the trustee of an express trust,
including a person with whom or in whose name a contract is made for
the benefit of another to sue without joining the beneficiary, will be
treated as such to enable him to maintain an action.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1227–1236;
Dec. Dig. § 417.*

For other definitions, see Words and Phrases, vol. 3, pp. 2611–2613.]

Appeal from Order Entered on Report of Referee.

Action by the Mutual Life Insurance Company of New York
against George Nicholas and others to foreclose a mortgage. From
an order confirming the report of referee on contest over the surplus,
certain parties appeal. Reversed, and proceedings referred back to
referee.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and MILLER, JJ.

Edward E. Sprague, for appellants Dugan et al.
Geo. H. Turner, for appellant Jennie Clarkson Home.
David Gerber, for respondents.

MILLER, J. On the 22d of December, 1908, George Nicholas
borrowed $30,000 from the Lincoln National Bank, and, to secure
the payment of it, executed and delivered a deed to Charles E. War-
ren, who was then cashier of the bank, and who gave back a letter
stating that the deed was to be held in escrow for the protection
of a certain number of notes of the grantor amounting to $30,000,
and that on the settlement of said obligation in full he, Warren, would
redeem the property. The premises in question were sold on the fore-
closure of a prior mortgage, and this is a contest over the surplus

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

between Warren and the bank on the one hand, and subsequent judgment creditors, on the other hand.

[1] The said instrument was recorded as a deed, without recording the defeasance clause. The subsequent judgment creditors assert that the conveyance, though in form a deed, was in fact a mortgage, and that it is unenforceable because the mortgage tax has not been paid; that the bank, the real party in interest, cannot maintain a suit on it, as it is a sealed instrument; and that Warren cannot maintain a suit on it, because as to him there was no consideration.

[2, 3] Certain propositions involved in this case are so plain that the bare statement of them suffices. The instrument in question was a mortgage. The recording of it as a deed, without the defeasance clause, gave the mortgagee no benefit of the recording act. It was valid, however, as against the subsequent judgment creditors, unless rendered invalid by the failure to pay the mortgage tax. When the instrument was offered in evidence before the referee, no objection was made; but, when it appeared what the actual transaction was, a motion was made to strike it out.

[4] Section 253 of the tax law (Consol. Laws 1909, c. 60) provides:

"Recording Tax.—A tax of fifty cents for each one hundred dollars and each remaining major fraction thereof of principal debt or obligation which is, or under any contingency may be secured at the date of the execution thereof or at any time thereafter by mortgage on real property situated within the state recorded on or after the first day of July, nineteen hundred and six, is hereby imposed on each such mortgage, and shall be collected and paid as provided in this article."

Apart from its context, that might be construed, as the respondent construes it, to mean that the tax was imposed not on the mortgage itself but on the right to record it, and that as between the parties an unrecorded mortgage might be enforced, although the tax had not been paid. But an examination of the entire article shows that that construction is not permissible. Section 252 provides, "No mortgage shall be exempt from the taxes imposed by this article by reason of anything contained in any other statute," etc., indicating a purpose to subject every mortgage to the tax. Section 257 provides:

"The taxes imposed by this article shall be payable on the recording of each mortgage of real property subject to taxes thereunder."

That was a convenient way to provide for, and the one most likely to insure, the collection of the tax. Sections 251 and 254 with reference to exemption from local taxation, and with reference to mortgages executed prior to the passage of the act, were doubtless intended to induce the holders of such mortgages to avail themselves of the provisions of the act and, by the payment of a single tax, to secure exemption from local taxation. Section 258 provides:

"No mortgage of real property shall be recorded by any county clerk or register, unless there shall be paid the tax imposed by and as in this article provided. No mortgage of real property which is subject to the taxes imposed by this article shall be released, discharged of record or received in evidence in any action or proceeding, nor shall any assignment of or agreement extending any such mortgage be recorded unless the taxes imposed thereon by this article shall have been paid as provided in this article. No judgment or final order in any action or proceeding shall be made for the foreclosure or

enforcement of any mortgage which is subject to the taxes imposed by this article or of any debt or obligation secured by or which secures any such mortgage, unless the taxes imposed by this article shall have been paid as provided in this article."

Section 265 provides that the tax shall be a lien upon the mortgage upon which it is imposed and upon the debt or obligation secured thereby, and section 266 provides for the enforcement of that lien. It thus plainly appears that the purpose of the act was to impose a tax upon all mortgages after a certain date, and, in order to insure the collection thereof, to require payment upon the recording of the mortgage and to make the mortgage unenforceable unless the tax was paid. No mortgage can be received in evidence in any action or proceeding unless the taxes imposed thereon shall have been paid "as provided in this article." We think the language is too plain for construction, and that, when it appeared that the instrument received in evidence was in fact a mortgage, it was the duty of the referee upon the motion of the appellant to strike it out. We have recently considered the effect of the failure to pay the transfer tax on a sale of stock (Bean v. Flint, 138 App. Div. 546, 123 N. Y. Supp. 385), wherein the distinction was pointed out between the statute imposing that tax and other stamp tax acts, which expressly provided that the instrument not stamped should be void only when the omission to affix the stamp was with intent to evade the provisions of the act and which also provided for subsequently affixing the stamps. For example, see Tobey v. Chippman, 13 Allen (Mass.) 123. We conclude, therefore, that no mortgage executed after the 1st day of July, 1906, can be received in evidence in any action or proceeding in this state unless the mortgage tax has been paid.

[5] However, the statute does not make it the duty of the mortgagee to record the mortgage forthwith, or provide that his failure to do so and to pay the tax shall render the mortgage void. The tax is payable when the mortgage is recorded. Unless the tax is paid, the mortgage cannot be offered in evidence or enforced. We see no reason why the mortgage may not be recorded and the tax paid at any time before the mortgagee seeks to enforce it. The Legislature doubtless considered that the provisions for exempting mortgages taxed by the act from local taxation, requiring the payment of the tax on recording the instrument, making the mortgage unenforceable unless the tax is paid, making the tax a lien and providing for its enforcement by the Attorney General, were sufficient to insure the collection of the tax, without adopting the harsh provision of Stock Transfer Tax Act (Consol. Laws 1909, c. 60) § 278, which invalidates the transfer unless the tax is paid at the time of it.

[6] The appellants are undoubtedly correct in asserting that the bank, not having been named as a party in the instrument, cannot sue to enforce it, and that the case does not fall within the express trusts authorized by Real Property Law (Consol. Laws 1909, c. 50) § 96. But it is of no concern to them whether the mortgage be enforced by the bank or by Warren, whether by the latter as trustee or otherwise. The rule that no one but a party to a sealed instrument can sue to

enforce it, which has survived most of the rules respecting the effect of a seal, does not require a holding that such an instrument is unenforceable if not made in the name of the principal. It simply requires the instrument to be enforced by the agent instead of the principal. Henricus v. Englert, 137 N. Y. 488, 33 N. E. 550. The law is not so absurd as to deny a right of action to the principal because of the presence of a seal and to the agent because a seal no longer conclusively imports a consideration. Section 449 of the Code of Civil Procedure seems to have been intended for just such a case, as the learned justice at Special Term held on the authority of Considerante v. Brisbane, 22 N. Y. 389. It is quite true that Warren is not the trustee of an express trust, but for the purpose of enabling him to maintain an action he will be so treated.

The order should be reversed, with $10 costs and disbursements, to abide the final order, and the proceeding referred back to the referee for a further hearing and report. All concur.