In the Matter of the Application of CENTRAL HANOVER BANK AND TRUST COMPANY, Petitioner, for an Order against 42 BROADWAY REALTY CORPORATION, Respondent.

Supreme Court, Special Term, New York County, November 23, 1939.

*Larkin, Rathbone & Perry,* for the petitioner.

*Guggenheimer & Untermyer [Abraham Shamos* and *Harry Hoffman* of counsel], for the respondent.

PECORA, J. This is an application under section 1077-c of the Civil Practice Act, by the petitioner as trustee and holder of a consolidated first mortgage on the premises 42 Broadway, for an order fixing the surplus income on those premises for the six months' period preceding July 1, 1939, at the sum of $64,434.99, and directing its payment or of such part thereof as the court may determine to the petitioner to be applied in reduction of the past due principal of said mortgage.

It is conceded that there are no arrears either of interest on the mortgage, or of taxes against the property.

The respondent, as the record owner of the premises, opposes the application.

The petitioner bases its claim that a surplus income of $64,434.99 exists upon an accountant's examination of respondent's books, and by computing the income and disbursements upon an accrual basis for the period under review. It may be reasonably assumed that such a surplus would be available if certain deductions made by the respondent are not deemed to be proper " carrying charges " within the meaning of section 1077-c.

Specifically, there are four items which the petitioner asserts are not legally deductible as carrying charges, in computing the existing surplus, but which the respondent contends properly and legally come within the meaning of that term. These are (a) legal

expenses and fees of $1,201.82 in a proceeding to enforce the collection of a tenant's rent, in opposing a prior application under section 1077-c of the Civil Practice Act, and a foreclosure action predicated on respondents' default in the payment of taxes; (b) New York State franchise tax of $421.02; (c) a penalty of $1,004.20 paid to the city of New York upon a belated payment of taxes on the premises; (d) the sum of $42,169.20, representing interest on a purchase money second mortgage. Petitioner also claims that certain other items, such as reserve for depreciation and for doubtful accounts, are not properly deductible.

It appears that the respondent does not oppose the disallowance of the reserve items for depreciation. But if the four items in dispute are allowable as deductions, there would be a surplus income of $19,634.59. Of course, if any of these disputed items are held not to be deductible as carrying charges, the surplus income would be enhanced correspondingly. A determination that all of them are undeductible would increase the surplus to $64,434.99. Whether the surplus income should be fixed at $19,634.59 or at $64,434.99, therefore, becomes a vital question in this proceeding.

The respondent further urges that reasons exist which should impel the court, in the exercise of a sound discretion, to decline to direct the payment of any part of a surplus income in reduction of the petitioner's mortgage. These reasons are that the security of the first mortgage is ample, that the property is economically managed, and that if the respondent is directed to make any such payment sufficient funds will not be available to provide for certain other maintenance and necessary work in order to preserve the rental income.

The item of $1,201.82 for legal fees and disbursements can hardly be regarded as a carrying charge properly deductible under section 1077-c. The definite trend of apposite adjudications is that expenses of this type are not a deductible disbursement. (*Matter of Addiss*, N. Y. L. J. Feb. 5, 1938, p. 622; *Matter of Strenger*, Id. March 24, 1938, p. 1435; *Matter of Nyamco Associates, Inc.*, Id. March 8, 1938, p. 1152; *Matter of New York Title & Mortgage Co.*, Id., March 1, 1938, p. 1027.) There are other decisions to the same effect, but it is quite needless to refer to them. In the light of these authorities it is my conclusion that this type of disbursement is not allowable.

Similarly I believe that the item representing payment of franchise tax, which is a tax imposed as an incident to corporate existence, and which is not related to the maintenance of the property owned by the corporation, is not legally deductible as a carrying charge. (*Matter of Pink* v. *Kayares Theatricals, Inc.*, 252 App. Div. 759; *Matter of Mortgage Commission* [*Ritevelyn Holding Corp.*], N. Y. L. J. May 16, 1939, p. 2253.)

I am likewise of the opinion that the interest of $1,004.20 which was paid to the city as a penalty for failure to pay the real estate taxes when due may not be deducted in a computation to determine surplus income. The taxes in the amount of $68,875 became due on April 1, 1939. They were not paid by April thirtieth, although it seems funds· were at the disposal of the respondent during that month which could have been utilized for this purpose. Ultimately on June seventeenth they were paid, together with the penalty in question. Obviously, the meaning of the language " taxes, interest and all other carrying charges " is that all expenses *necessary* to maintain the property are legitimately deductible. Where it is disclosed, however, that the imposition of a penalty and the consequent increase of the tax obligation would have been avoided if the owner had exercised reasonable diligence in making a timely payment of the taxes, he should not be heard to complain if the penalty payment subsequently meets with objection. The mortgage moratorium legislation (Laws of 1933, chap. 793) was designed to help owners to preserve their equities (*Matter of Pink* v. *Kayares Theatricals, Inc.*, 164 Misc. 289); but as such beneficiaries they may not knowingly incur penalties to the prejudice of the rights of a mortgagee.

There now remains for consideration the deductibility of the largest expenditure of $42,169.20, which was the interest paid on a junior or second mortgage. Since the *bona fides* of that mortgage are challenged by the petitioner, it becomes the court's duty to examine the facts surrounding its creation and existence. It is fairly well established today that the interest paid on a valid junior mortgage is a proper charge against the income of the mortgaged premises under the moratorium statute. (*Matter of Pink* v. *Kayares Theatricals, Inc.*, 164 Misc. 289; modfd., 252 App. Div. 759; *Matter of New York Title & Mortgage Co.*, N. Y. L. J. March 1, 1938, p. 1027; *Matter of Ebling Brewing Co.* [*Rubel Corporation*], Id. Aug. 31, 1937, p. 536; *Matter of Mortgage Commission* [*Brooklyn Cons. R. Corp.*], 255 App. Div. 979; *Matter of Realty Associates, Inc.*, 267 N. Y. 91; *Matter of Realty Associates Securities Corp.*, Id. 503.) The statute uses the word " interest," and this should be interpreted to mean all interest, for otherwise the law would be so emasculated as to enable it to accord little of the contemplated protection.

Generally speaking, the petitioner's contentions up to this point are in accord with such a construction. But it asserts that the second mortgage is fictitious and its origin and existence illegitimate because of the fact that the respondent owner and the junior mortgagees are in reality the same entity. The weight of authority

supports the view that interest on a fictitious junior mortgage may not legally be .deducted. (*Matter of Realty Associates, Inc.*, 267 N. Y. 91; *Matter of Realty Associates Securities Corp.*, Id. 591; *Matter of Mortgage Commission* [*Hermele & Heft Holding Corp.*], N. Y. L. J. July 21, 1938, p. 184.) In *Matter of Mortgage Commission (69–30 62 Street Holding Corp.*) (N. Y. L. J. Dec. 10, 1938, p. 2079, and Feb. 11, 1939, p. 700) the deduction was sanctioned although the original mortgage was held by the same individuals who owned the stock of the corporation which had title to the premises.

The junior mortgage in question in this proceeding had its inception in the following manner: On September 24, 1917, a trust was created by a written instrument which named two trustees. On August 22, 1934, when a prior owner of the premises, Beaver Holding Corporation, had title, a bond and purchase-money second mortgage in the principal sum of $1,487,500 were acquired by the trust. The mortgage was recorded on the same day in the office of the register. The bond and mortgage described the holders by their individual names instead of in their representative capacity as trustees, but it is apparent that the bond and mortgage were actually held by them as such trustees. Other than as such mortgagees these trustees did not have any interest in the property at that time, either directly or indirectly, and. were not connected or associated with the Beaver Holding Corporation. Petitioner does not question the genuineness of this particular second mortgage. The principal of this second mortgage was subsequently reduced to $1,473,199.76. Owing to defaults which occurred in the payment of the principal in January, 1938, and in the payment of interest in January, April and July, 1938, the trustees commenced a foreclosure action and on or about September 2, 1938, a judgment of foreclosure and sale was entered, in accordance with which a foreclosure took place on September 28, 1938. This judgment fixed the indebtedness to the trustees in the sum of $1,510,060.38.

On September 22, 1938, a few days before the sale, the respondent 42 Broadway Realty Corporation was incorporated with an authorized capital stock of five shares of the par value of $100 each. On September 27, 1938, the entire authorized capital stock of the corporation was issued to the trustees for $500. This corporation entered into an agreement with the trustees providing, among other things, that the trustees were to bid $1,398,251.90 at the foreclosure sale, and if the bid should prove successful the trustees were to execute and deliver to the corporation an assignment of the bid and were to pay the expenses of the foreclosure sale and certain related disbursements. In consideration of the assignment of the

bid the corporation agreed to execute and deliver to the trustees its bond and second mortgage in the principal sum equal to the aggregate of the bid and the disbursements paid, as well as the expenses of recording the second mortgage. At the foreclosure sale the trustees made a successful bid of $1,398,251.90, and then delivered an assignment of the bid to the corporation. Then the corporation, on September 28, 1938, duly executed its bond and second mortgage to the trustees in the principal sum of $1,405,604.11, which amount is the aggregate of the bid and the disbursements of the foreclosure action, sale, title search, legal fees, documentary stamps, etc. By the terms of said bond and mortgage interest at the rate of six per cent is payable quarter-annually. United States documentary stamps were affixed to the bond before its delivery, and on August 15, 1939, the mortgage was recorded, after the petitioner attacked its *bona fides* in its papers on this motion, but before the return day of the motion.

Now the petitioner claims that the second mortgagees and the respondent corporation are one and the same entity and were such throughout the entire period under review. The petitioner insists that the corporate form of the respondent is a fiction which should be disregarded, since the trustees own all of the authorized capital stock of the respondent corporation.

The existence of a situation of this kind naturally deserves the closest scrutiny by the court. But a finding in favor of petitioner cannot rest solely on the fact that the owner of the equity and the holder of the junior mortgage are virtually one and the same person. Standing alone, that is insufficient to brand a transaction as fraudulent where relevant facts would lead to an opposite conclusion. The identity of ownership is an incident to be viewed in the light of all other aspects. If a mortgage otherwise has all the characteristics of genuineness, the protection afforded by the statute to the owner of the equity should not be withheld merely because the exigencies of a foreclosure sale occasioned the taking of title by a process such as the trustees followed here. In the final analysis the validity or *bona fides* of a mortgage must be determined by the application of other tests. The mortgage does not lack consideration nor was it placed on the property for the purpose of depleting the surplus to the prejudice of the rights of the senior mortgagee. It is founded on a promise to repay a sum of money actually loaned in 1934, and hence it is not sham. In its broadest sense the mortgage was in replacement of the earlier one, which was slightly larger. The legitimacy of its original inception is not disputed.

The proceeding in *Matter of Realty Associates* (267 N. Y. 91) is enlightening but not analogous, for there the court found the trans-

action to be fictitious, the mortgage without consideration, and executed as part of a general scheme perpetrated under forms of law that could not be sanctioned. Obviously, in the instant case if no foreclosure suit of the second mortgage had been commenced, and if it were still in existence, the petitioner would be in no position to question its validity. The trustees here were well within their rights in instituting foreclosure proceedings when the defaults occurred under this former instrument, and the principal amount of the present second mortgage is less than that of the former one. It is difficult to conceive how any of the petitioner's rights have become impaired thereby.

The facts disclosed on this application will not support a finding that a plan was formulated by the respondent in a deliberate attempt unjustly or inequitably to draw to itself income which should rightfully be applied in reduction of the first mortgage.

I have not overlooked the further arguments by the petitioner that because the mortgage tax on the present junior mortgage imposed by section 258 of the Tax Law had not been paid when this proceeding was instituted that mortgage may not be offered in evidence in this proceeding; that it is unenforcible against the respondent; and that interest payments made thereunder are unnecessary for the preservation of the respondent's equity in the premises. Assuming that such arguments were sound, they have evaporated because of the fact that it now appears that such mortgage tax was paid before the hearing of this motion. I may observe also that the failure to pay the tax under that section does not render the mortgage void; that statute merely provides that no mortgage of real property subject to tax shall be " released, discharged of record or received in evidence in any action, proceeding * * * unless the taxes imposed thereon * * * shall have been paid as provided " therein. Such interpretation has heretofore been approved in *Mutual Life Ins. Co.* v. *Nicholas* (144 App. Div. 95), where the court said: " However, the statute does not make it the duty of the mortgagee to record the mortgage forthwith, or provide that his failure to do so and to pay the tax shall render the mortgage void. The tax is payable when the mortgage is recorded. Unless the tax is paid the mortgage cannot be offered in evidence or enforced. We see no reason why the mortgage may not be recorded and the tax paid at any time before the mortgagee seeks to enforce it."

This leaves for final consideration the proposal of the respondent that if the court should find that the petitioner is entitled to any part of the surplus the respondent be given leave to make such payment in certificates issued under the consolidated first mortgage.

Respondent points out that the adoption of such a method of payment would result in an automatic reduction of the principal of the mortgage, to a more substantial extent than if the payment were made in cash, for the reason that the certificates are now selling at less than par. It is true that acquisition of such certificates by purchase would place the respondent in a position of being able to effect a greater reduction than if a like sum were paid in cash to petitioner. In my opinion the court lacks the power to direct the acceptance of such a form of liquidation since the provisions of section 1077-c apparently contemplate the payment of surplus in cash " to the mortgagee." (See *Matter of Murray Development Co.*, N. Y. L. J. Oct. 8, 1938, p. 1048.) I fail to see how the purchase and surrender of mortgage certificates in the open market by one liable for the payment of the mortgage itself would constitute " the payment of * * * surplus * * * to the mortgagee to apply toward the reduction of any past due principal," within the meaning of the statute.

I find that the surplus income during the period under review amounted to $22,261.63, and direct that $10,000 thereof be paid to the petitioner and applied to the reduction of the past-due principal of its mortgage. To that extent the motion is granted; otherwise denied. Settle order.