**In re HOTEL SYRACUSE, INC., Debtor.**

No. 01–64962.

United States Bankruptcy Court, N.D. New York.

Dec. 6, 2001.

Hancock & Estabrook, LLP (Stephen A. Donato, Camille W. Hill, of counsel), Syracuse, New York, for debtor.

Menter, Rudin & Trivelpiece, P.C. (Jeffrey A. Dove, of counsel), Syracuse, New York, for Titan Management.

Hodgson Russ, LLP (Richard L. Weisz, of counsel), Albany, New York, for Unsecured Creditors Committee.

Guy A. Van Baalen, Utica, New York, Assistant U.S. Trustee.

Green & Seifter, Attorneys, PLLC (Robert Weiler, of counsel), Syracuse, New York, for Commonwealth Land Title Ins. Co.

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

On August 13, 2001, the Hotel Syracuse, Inc. ("Debtor") filed a motion seeking authorization to use cash collateral and to provide adequate protection pursuant to § 363 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code") ("Motion"). On August 13, 2001, the Court entered an Order authorizing the Debtor's interim use of cash collateral. On September 7, 2001, the Court also approved a Stipulation, dated August 29, 2001, for the Debtor's continued use of cash collateral on consent of Titan Management, L.P. ("Titan").[1]

The Debtor's Motion was initially heard on August 21, 2001, in Binghamton, New York. A final hearing was scheduled to be held in Syracuse, New York, on September 4, 2001. In the interim, on August 21, 2001, the Official Unsecured Creditors' Committee ("Committee") was appointed, and on August 30, 2001, the Committee filed a limited objection to the terms of the Debtor's use of cash collateral, asserting that pursuant to Code § 363(o)(2), Titan had not met its burden of establishing the validity of its security interest in the cash collateral. The Motion was heard on September 4, 2001, and adjourned to October 2, 2001, when it was determined that an evidentiary hearing would be necessary. On October 22, 2001, the Court conducted a brief evidentiary hearing, which was adjourned to November 13, 2001, in order for the Committee to submit a memorandum of law on the applicability of § 258 of the New York Tax Law ("NYTL") to the admissibility of certain exhibits of the Debtor to which it had objected.

On October 29, 2001, the Committee filed a Supplemental Objection, along with a Brief/Memorandum. On November 8, 2001, Titan filed a Brief/Memorandum, to which the Committee filed a Reply Brief/Memorandum on November 15, 2001. On November 27, 2001, Titan filed a Surreply Brief/Memorandum. Also on November 27, 2001, a Response and Surreply Memorandum was filed by the Commonwealth Land Title Insurance Company ("Commonwealth") as an interested party.[2] In the interim, the hearing scheduled for November 13, 2001, was rescheduled to November 28, 2001, on the consent of all parties. The Court heard oral argument on November 28, 2001, and agreed to take the matter under submission.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(A), (M) and (O).

### FACTS

The Debtor filed a voluntary petition pursuant to chapter 11 of the Code on August 13, 2001.[3] The Debtor operates a 650 room full service hotel in Syracuse, New York. Debtor alleges that pursuant to a Consolidated Promissory Note, dated March 25, 1999, Debtor borrowed $13,650,000 from Titan. *See* Debtor's Motion at 3. The Debtor also alleges that as

---

1. Authority for the Debtor's continued use of cash collateral has been extended by Orders of the Court dated 9/26/01 10/10/01, 10/29/01, 11/13/01, 11/21/01, 11/26/01 and 12/3/01.

2. Commonwealth asserts that it issued a title policy in connection with the mortgage at issue herein.

3. The Debtor previously filed a chapter 11 petition in this Court on October 26, 1990. By Order dated June 18, 1993, the Court confirmed the Debtor's Third Amended Plan of Reorganization.

security for the loan, Consolidation, Modification, Spreader and Extension Agreement, dated March 25, 1999 ("Consolidation Agreement") was executed, granting Titan a mortgage on certain real property on which the Debtor's hotel is operated and a security interest upon and in substantially all of Debtor's personal property, including, without limitation, rents, account receivables, etc. ("Mortgage").[4] *See id.* The City of Syracuse Industrial Development Agency ("SIDA") was also a party to the Consolidation Agreement and was identified, along with the Debtor, as the "Mortgagor."

## DISCUSSION

Code § 363(*o*)(2) states that "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(*o*)(2). In this case, Titan asserts that it holds a security interest in both real property and personal property in which the Debtor holds an interest, including certain rents derived from operations of the hotel and retail establishments located on the hotel premises. It is the Committee's position that Titan has not met its burden to establish the nature, extent and priority of its secured position, which would entitle it to adequate protection for the use of cash collateral. At a brief evidentiary hearing conducted on October 22, 2001, the Committee objected to the admission of several of the Debtor's exhibits, including the Consolidation Agreement and an Assignment of Leases and Rents. Central to the Committee's position is the argument that NYTL § 258[5] prohibits the admission into evidence of the documents without the payment of the mortgage recording tax provided for in NYTL § 253.

■ Citing to *Marsh v. Leseman,* 242 F. 484 (2d Cir.1917), Titan takes the position that § 258 is inapplicable to proceedings before a federal bankruptcy court sitting in New York. In *Marsh* the trustee was attempting to avoid an alleged preference and relied on NYTL §. 258 in arguing that testimony concerning an unrecorded "mortgage," which had been destroyed, should not be considered by the court. The Court of Appeals for the Second Circuit opined that "[t]his provision of the state law [NYTL § 258] as to evidence applies in actions in its own courts, not to actions in the federal courts." *Id.* at 486. While there is certainly nothing ambiguous about the statement, the Committee argues that it is nothing more than *dicta.* The Committee contends that in making the statement, the Second Circuit relied on three cases decided between 1903 and 1910, which held that foreign corporations, although not registered to do business in the state and, therefore, precluded from suing in state court, could sue in the federal courts in the state. According to the Committee, the support for the Second Circuit's statement is no longer good law

---

**4.** For the limited purposes of this Decision and to minimize any confusion in discussing the arguments by the parties, the Court finds that several transactions may have occurred on March 25, 1999, involving several mortgages on premises on which the Debtor operates its hotel which were ultimately consolidated by the Consolidation Agreement. This includes a "gap mortgage" and security agreement for a loan of $5,650,000, as well as prior consolidated mortgages securing $8,000,000, for an alleged consolidated debt of $13,650,000.

**5.** NYTL § 258(1) provides that "[n]o mortgage of real property which is subject to the taxes imposed by this article shall be ... received in evidence in any action or proceeding, nor shall any assignment of or agreement extending any such mortgage be recorded unless the taxes imposed thereon by this article shall have been paid...."

as "more recent decisions have recognized that a state law barring unregistered corporations from enforcing a claim do bind the Federal courts."

In support of this statement, the Committee cites to *Domino Media, Inc. v. Kranis,* 9 F.Supp.2d 374 (S.D.N.Y.1998). In *Domino* the defendants asserted that Domino Media, Inc., a dissolved Colorado corporation, had no standing to sue in a New York federal court based on the argument that (1) Colorado law prohibits dissolved corporations from suing more than two years after dissolution and (2) New York laws forbids suit by a foreign corporation doing business in the state without authority.

The court in *Domino* first noted that Rule 17(b) of the Federal Rules of Civil Procedure, adopted in 1937, provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." The court observed although at first glance it appeared that the law of Colorado alone would control, the court found that the analysis was not quite that straight forward. It first noted that in 1949 the Supreme Court in *Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) held that a Tennessee corporation was barred from maintaining a diversity suit in Mississippi federal court where it was not qualified to do business. The court in *Domino* then cited to a subsequent decision rendered in 1965 by the Supreme Court. *See Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). *Hanna* addressed the question of whether federal or state law should govern the service of process in a federal court sitting in diversity. The Supreme Court determined that where a Federal Rule of Civil Procedure conflicted with state law of the forum, the district court should apply the Federal Rule, provided it did not exceed the authority under the Rules Enabling Act or violate the Constitution. *Id.* at 471, 85 S.Ct. at 1144.

The *Domino* court observed that "*Hanna* implicitly calls *Woods* into question by suggesting that Rule 17(b) applies to the exclusion of a forum state door-closing statute so long as it is a valid exercise of authority under the Rules Enabling Act." Indeed, the court noted that some courts have found that "states' interests in enforcing door-closing statutes in the federal courts is weak." The court went on to state that "[a]lthough the Second Circuit has applied *Woods* subsequent to *Hanna,* it has not explicitly considered their apparent inconsistency. Hence, the issue remains open in this Circuit." Ultimately, the court in *Domino* concluded that the plaintiff had standing to sue in the New York District Court based on a finding that a dissolved Colorado corporation which obtains a judgment in an action commenced within the survival period had the capacity to sue outside the two year corporate survival period to enforce that judgment. It was not necessary for the court to make a finding of whether the plaintiff was authorized to do business in New York. Thus, it does not appear clearcut that the law on which the Second Circuit relied in *Marsh* is no longer good law as the Committee contends.

The Committee argues that NYTL § 258 is substantive law and as such should not be ignored by a federal court sitting in that state. According to the Committee, Titan is asking the Court "to enforce a property right in bankruptcy which it does not have under State law, i.e. the right to claim or enforce a lien without paying the mortgage recording tax." *See* Committee's Memorandum of Law, filed October 29, 2001, at 5. However, as the Court pointed out at the hearing on November 28, 2001, by preventing Ti-

tan/Debtor from putting the Mortgage and other documents into evidence, the Court would actually be diminishing Titan's rights by preventing it from doing what it could do in state court. New York's courts have held that a mortgage could be admitted in a foreclosure action by the mortgagee by simply paying the mortgage recording tax. *See The Mutual Life Ins. Co. of New York v. Nicholas,* 144 A.D. 95, 98–99, 128 N.Y.S. 902 (N.Y.App.Div.1911); *see also Commonwealth Land Title Ins. Co. v. Lituchy,* 161 A.D.2d 517, 518, 555 N.Y.S.2d 786 (N.Y.App.Div.1990) (noting that "the failure to record the mortgage and pay the tax does not render the mortgage and note unenforceable (citations omitted). Thus, Commonwealth [plaintiff to whom note and mortgage were assigned] may be entitled to obtain a judgment on the debt simply by paying the required tax any time prior to judgment or final order. (citations omitted)."). In the bankruptcy context, Titan would arguably be prevented from paying any mortgage recording tax that might be owed given the existence of the Code § 362(a) automatic stay.

The Court does not accept the Committee's argument that NYTL § 258 is substantive. It is a revenue raising statute, nothing more. *See Nicholas,* 144 A.D. at 97, 128 N.Y.S. 902. NYTL § 278 is a similar tax provision. It provides that the failure to pay the tax on the transfer of taxable stock certificates prevents a party from offering the certificates into evidence in any New York court. *See Cooper v. Gossett,* 263 N.Y. 491, 495, 189 N.E. 562 (1934); *In re Olson's Estate,* 119 N.Y.S.2d 207, 211 (Sur.Ct.1952). NYTL § 278 also has been found to be a revenue raising statute. *See id.* The courts have held that it is "procedural only." *Id.* at 210 (citations omitted).

A similar conclusion may be reached with respect to NYTL § 258 in the opinion of this Court. NYTL § 258 and § 278 allow for the enforceability of rights derived from either a mortgage or a stock certificate provided the tax is paid prior to final judgment or "transfer" of the stock on the books of the corporation, respectively. Ultimately, no one is permanently harmed or injured by the mortgagee or the stock transferor/transferee having failed to pay the appropriate tax and having to pay it later in order to enforce their rights. Therefore, the Court concludes that NYTL § 258 does not prevent the admission of a mortgage and other related documents into evidence in a federal bankruptcy court due to a failure to pay the mortgage recording tax.

█ Despite having reached this conclusion, the Court also deems it appropriate to address whether the recording of the Mortgage, as described in the Consolidation Agreement, was properly exempted from the payment of the mortgage recording tax. The Committee contends that the 1993 chapter 11 plan and the $8,000,000 note proceeds were used to pay creditors of Hotel Syracuse, Inc. and were not used to acquire and improve property in Syracuse. The Committee makes a similar argument with respect to the gap mortgage for $5,650,000. It is the Committee's position that the Mortgage was not exempt from payment of the mortgage recording tax because the underlying loans were not used for a proper IDA purpose. According to the Committee, New York General Municipal Law ("NYGML") § 858 limits the authority of SIDA to actions "involving acquisition, construction and equipment purchases." *See* Committee's Reply Brief, filed November 15, 2001, at 4. It is the Committee's contention, based on what information it has been able to glean, that the loan proceeds were actually used to finance capital operating expenses of the reorganized debtor, rather than for acqui-

sition, construction or equipment purchases. The Committee, citing to *City of Hornell v. Board of Assessors,* 256 A.D.2d 1173, 684 N.Y.S.2d 725 (N.Y.App.Div. 1998), asserts that "just because an IDA is a party to a transaction does not mean the project is automatically exempt from taxation." In *Hornell* the City of Hornell transferred property known as the Hornell Municipal Airport to the City of Hornell Industrial Development Agency. *Id.* at 1174, 684 N.Y.S.2d 725. The court found that the property was not exempt from taxes because it was located outside the city limits. NYGML § 854(4), which defines "projects", expressly excludes "projects which are [located] entirely outside the sponsoring municipality." [6] *Id.*

Titan counters the Committee's arguments by pointing out that SIDA's powers are broad and intended to promote the economic welfare, recreation opportunities and prosperity of the City's inhabitants. It is to "encourage" and "assist" with the "acquiring, constructing, reconstructing, improving, maintaining, equipping and furnishing industrial, manufacturing, warehousing, commercial, research, and recreational facilities." *See* NYGML § 858.

At the hearing on November 28, 2001, the Court took issue with the Committee's position that SIDA's authority was limited to providing assistance to activities in the community involving "acquisition, construction and equipment purchases" as identified in NYGML § 858(10). The Court pointed out that NYGML § 858(10) is but one of seventeen subsections in the statute identifying powers of agencies such as SIDA. The Court, having been involved with the Debtor's prior bankruptcy case, noted that the Hotel Syracuse had been represented to it as being the centerpiece of revitalization of downtown Syracuse. In this regard, NYGML § 858 provides that agencies such as SIDA are to "advance the job opportunities, health, general prosperity and economic welfare of the people of New York and to improve their recreation opportunities, prosperity and standard of living." SIDA's authority and powers are clearly broad. Indeed, NYGML § 858(17) grants the agencies the power and authority "[t]o do all things necessary or convenient to carry out its purposes...."

The Committee offers nothing in the way of case law or affidavits to suggest that transactions involving the Debtor, SIDA and Titan were in any way contrary to those purposes. On the other hand, Titan offers copies of the affidavits prepared by SIDA and submitted to the Onondaga County Clerk's office in connection with the recording of a $5,650,000 gap mortgage, dated March 25, 1999, and the $13,650,000 Consolidation Agreement, dated March 25, 1999 ("Exemption Affidavits") in support of its position. The Exemption Affidavits request that the mortgage documents be accepted without payment of the mortgage recording tax, citing to Chapter 870 *et seq.* of the General Municipal Laws of the State of New York, as well as Section 255 of Article 11 of the Tax Law of the State of New York.

The Court concludes that Titan has met its burden in asserting that the recording of its Mortgage was exempt from payment of the mortgage recording tax. The arguments made by the Committee's counsel, without more, are insufficient to overcome the Exemption Affidavits and the apparently undisputed fact that the Mortgage was accepted for recording by the Ononda-

---

**6.** In the case before this Court, there is no suggestion that the Hotel Syracuse is located outside the city limits of Syracuse.

ga County Clerk without payment of the mortgage recording tax. Accordingly, the Court finds that even if NYTL § 258 were substantive and entitled to evidentiary application in this Court, the recording of the Mortgage was properly exempted from payment of the mortgage recording tax and the documents, including the Consolidation Agreement and the Assignment of Leases and Rents, are entitled to be received into evidence unless there is some other evidentiary basis for their being inadmissible.

As a final argument, the Committee asserts that because there is no reference in the Exemption Affidavits to the lease between SIDA and Ho–Syr Properties, dated May 2, 1981 ("Lease"), and assigned to the Hotel Syracuse, Inc.[7] by agreement dated December 31, 1986, the Lease cannot be admitted into evidence. The Committee argues that because the Lease is for a period in excess of three years, pursuant to New York Real Property Law § 291, it is separate property that should have been referenced in the Exemption Affidavits for it to be entitled to be exempted from payment of the mortgage recording tax. The Court does not find merit in this argument. Admittedly, "a mortgage upon a leasehold interest in real property creates a lien upon an interest in real property." *People ex rel. The Henry Elias Brewing Co. v. Gass*, 120 A.D. 147, 150, 104 N.Y.S. 885 (N.Y.App.Div.1907), *aff'd* 190 N.Y. 565, 83 N.E. 1129 (N.Y.1908). The tax pursuant to NYTL § 273 is imposed upon the recording of the mortgage. *Id.* In this case, it would appear that the leasehold interest is on the premises identified in "Exhibit A" attached to the Exemption Affidavits. Those are the same premises encumbered by the gap mortgage and Consolidation Agreement. The tax imposed is on the principal debt or obligation. *See* NYTL § 253 (McKinney's 1998 & Supp.2001). The Mortgage includes an exhibit identifying the premises and an exhibit identifying the Lease. There has been no suggestion that there is a mortgage on the leasehold interest, separate and apart from that allegedly referenced in the Mortgage, that was recorded. The Court thus concludes that the Exemption Affidavits apply to the Mortgage and the real property interests identified in it and the exemption of payment of the mortgage recording tax is not limited to the premises referenced in the exhibits attached to the Exemption Affidavits as the Committee contends.

Based on the foregoing, it is hereby

ORDERED that the Committee's objection to admission of the Mortgage and other related documents into evidence at the hearing on the Debtor's motion seeking approval of the use of cash collateral based on NYTL § 258 is overruled.

---

7. The Court makes no finding whether the corporation which existed in 1986 is the same entity which now appears before this Court as the "Debtor."